SMITH BROTHERS, INC., a Corporation, *Appellant,* v. W. A. WILLIAMS, et al., *Appellees.*

En Banc.

Opinion filed February 18, 1930.

Rehearing granted and decree affirmed August 6, 1930.

*Shackleford, Ivy, Farrior & Shannon, Sutton, Tillman & Reeves,* and *Frank P. Ingram* and *Edwin Brobston,* for Appellant;

*H. D. Wentworth* and *O. K. Reaves,* for Appellees.

WHITFIELD, J.—The decree appealed from in effect adjudicated the invalidity of Chapter 10145, Acts 1925, now Section 2502-11, Comp. Gen. Laws, 1927, providing for paving, grading or curbing of public roads outside of municipalities and for assessing the entire costs thereof against abutting property, in counties of not less than than 125,000 population according to the State census of 1925, and giving county commissioners full power and authority therefor. It is contended for the appellant that as Chapter 10145 is in effect the same as Chapter 9316, Acts 1923,

now Sections 2480-9, Comp. Gen. Laws, 1927, except that the latter applied to counties of not less than 75,000 nor more than 100,000 (population) according to the Federal census of 1920, and the constitutional validity of Chapter 9316, having been adjudicated by this Court in Moore v. Hillsborough County, 86 Fla. 514, 98 So. R. 505, the validity of Chapter 10145 has in effect been adjudicated; and further that as Chapter 12208, Acts 1927, Section 2512, Comp. Gen. Laws, 1927, has validated the acts done under Chapter 10145, the validity of the certificates of indebtedness issued for paving, grading or curbing public roads under the latter Act is established, and the decree appealed from should be reversed and the payment of the certificates enforced as contemplated by the last cited statutes.

This makes it proper to consider the questions that were duly presented for decision and decided as to the constitutional validity of Chapter 9316 in the Moore case; and also to consider the effect of Chapter 12208, Section 2512, Comp. Gen. Laws, 1927, as a validating Act in determining the validity and effect of the various provisions of Chapter 10145 that are challenged here.

In Moore v. Hillsborough County, 86 Fla. 514, 98 So. R. 505, decided in 1923, an injunction was sought to restrain the county and its officers from paving, grading and curbing a public road and from issuing certificates of indebtedness against complainant's property for such paving, grading and curbing. It was in effect alleged that Chapter 9316, Acts 1923, now Sections 2480-9, Comp. Gen. Laws, 1927, under which the paving was to be done, is special legislation under Section 20, Article III of the Constitution and that the notice of such proposed legislation was not given as required by Section 21, Article III; that Section 7 of the Act illegally provides that expenses incurred in giving

notice of proposed issue of certificates shall be included in the amount of the certificates, which "with attorney fees and costs of court for any suit instituted, shall be a lien upon the property named in the certificate as well as the principal and interest on the amount named in said certificate and does not provide that the expenses incurred in giving notice as provided in said Act for the proposed issuance of said certificates, and the cost and expenses of the issuance of said certificates, shall be prorated against the abutting property in equal proportions to the front footage on said highway to be paved under and by virtue of said Act; that said Act is unconstitutional and void in that it vests in the board of county commissioners the right to determine the sufficiency of the petition and that their determination of the sufficiency of the petition shall be final and conclusive, which Act thereby attempts to place a lien upon the property of complainant without due process of law, and attempts to deprive complainant of the right to have a judicial determination of the sufficiency of the petition filed under said Act for the paving of public roads in counties of not less than seventy-five thousand, or more than one hundred thousand."

A demurrer was interposed stating merely that "the bill of complaint contains no equity." The demurrer was sustained and the cause was dismissed. On appeal the decree was affirmed without opinion. Moore v. Hillsborough County, 86 Fla. 514, 98 So. R. 585.

The validity of Chapter 9316, Acts 1923, was not challenged on any other ground than those stated above. Obviously, if Chapter 9316 be a local law within the meaning of Sections 20 and 21, Article III, Constitution, the question as to notice of it as a proposed law, was concluded by its enactment. Stockton v. Powell, 29 Fla. 1, 10 So. R. 688; 15 L. R. A. 42; Rushton v. State, 58 Fla. 94, 50 So.

R. 486; Vann v. State, 65 Fla. 160, 61 So. R. 323; State v. Fearnside, 87 Fla. 349, 100 So. R. 256. Chapter 9316 was enacted before the amendment of 1928 to Section 21, Article III of the Constitution and the statute was not enacted at a special session of the Legislature. Horton v. Kyle, 81 Fla. 274, 88 So. R. 757. The criticism of the provisions of Section 7 of the Act as to prorating costs, etc., even if well founded would not of itself render the entire Act invalid. The mere fact that the Act attempts to confer powers of final adjudication upon the board of county commissioners does not invalidate the Act because notwithstanding such statutory provision, the courts may judicially determine justiciable questions arising under the statute. See D'Alemberte v. State, 56 Fla. 162, 47 So. R. 489.

The decree on demurrer in the Moore case was properly affirmed.

Chapter 10145, Acts 1925, purports to authorize "the owner or owners of two thirds of the property abutting on any public road, or any continuous portion thereof," to present to the board of county commissioners a petition duly signed by the petitioners asking that such public road be paved, etc., "then it shall be the duty of such board" "to grant the petition and order the road paved" etc., "as the petitioners may request; the determination of said board as to the sufficiency of the petition shall be final and conclusive. After the improvement is completed the entire costs thereof shall be assessed against the property abutting upon said public road * * * in proportion to the frontage of such public road." "All such assessments * * * shall constitute a prior lien to all other liens, except taxes, upon the property upon which the assessment is made." "As soon as said assessment is made" the board "shall issue certificates of indebtedness for the amounts so assessed against the abutting property."

These provisions attempt to confer upon "the owner or owners of two-thirds of the property abutting on" a public road, authority to designate the property which shall be assessed for the entire costs of the public road improvement without reference to benefits to the abutting property or to public necessity and use of the road, which would result in a deprivation of property without due process of law, or a denial of the equal protection of the laws.

The statute provides that "before issuing any of the certificates" the board "shall give notice by advertising once a week for four weeks * * * of the amount of such certificate proposed to be issued," etc. Anyone having an interest in such property may at any time within thirty days from the giving of such notice appear before the board * * * at any meeting thereof and make valid objection to the issuance of such certificate or the amount thereof. The board shall after a hearing upon such objection determine its validity. If no such objection shall be made the certificate shall be conclusive and not subject to attack."

This procedure relates to issuing certificates of indebtedness and does not clearly appear to afford a sufficient notice and an opportunity to be heard as to the validity and reasonableness of the projects or as to the benefits to the abutting property and the use of the road by the public, which hearing should appropriately be had before the improvement is provided or the assessment made, where the projects are designated by petitions of individuals and not by an established and duly authorized governmental agency.

These fundamental matters were not presented for consideration in Moore v. Hillsborough County, 86 Fla. 514, 98 So. R. 505, decided in 1923. That decision is conclusive as to the matters presented by the pleadings and adjudicated by the court. See County Commissioners v. King, 13 Fla. 451; Weinberger v. Board, 93 Fla. 470, 112 So. R. 253. See also State ex rel. v. Greer, 88 Fla. 249, 102 So. R. 739,

37 A. L. R. 1298; Douglass v. Pike County, 11 Otto (U. S.) 677, 25 Law Ed. 968; Ross v. Road Dist., 27 Fed. (2nd) 153; 12 C. J. 769, 15 C. J. 626. No question of waiver or estoppel as to organic rights is presented here. In Christopher v. Mungen, 61 Fla. 513, 55 So. R. 273, a statute was held to be valid which had been held invalid in Adams v. Sneed, 41 Fla. 151, 25 So. R. 893. In Westlake v. Merritt, 85 Fla. 28, text 31, 95 So. R. 662, a statute was held to be invalid which had been regarded as valid in Rasmussen v. Tippins, 83 Fla. 530, 91 So. R. 560. See McCollum v. McConaughy, 141 Iowa 172, 119 N. W. R. 539; Pierce v. Pierce, 46 Ind. 86; 12 C. J. 801, 15 C. J. 960.

The principles as to due process of law in forming taxing districts above stated, were elucidated and applied in Browning v. Hooper, 269 U. S. 396, 46 Sup. Ct. R. 141, 70 Law Ed. 330, decided in 1926; State ex rel. v. Ball, 116 Texas 527, 296 So. W. R. 1085. See City of Ft. Myers v. State, 87 Fla. 704, 117 So. R. 99; Stewart v. Daytona, etc., 94 Fla. 859, 114 So. R. 545; A. C. L. v Lakeland, 94 Fla. 386, 115 So. R. 669; Parrish v. Hillsborough County, 98 Fla. 430, 123 So. R. 830. Other criticisms of the statute need not be discussed here. Chapter 12208, Acts of 1927, validates acts done under Chapter 10145, Acts 1925.

While a statute cannot validate or vitalize a previous statute or provisions of a previous statute that conflict with the Constitution, Horton v. Kyle, 81 Fla. 274, 88 So. R. 757, 12 C. J. 1092, yet a statute may validate previous administrative assessments or other acts or proceedings in so far as such assessment or other proceedings do not violate any provision of organic law. City of Orlando v. Giles, 51 Fla. 422, 40 So. R. 834; Cranor v. Board, 54 Fla. 526, 45 So. R. 455; Givens v. Hillsborough County, 46 Fla. 502, 35 So. R. 88; Camp v. State, 71 Fla. 381, 72 So. R. 483; Spencer v. Merchant, 125 U. S. 345; 31 L. Ed. 763; Taylor v. Hastings Drainage District, 78 Fla. 268, 82 So. R. 815;

Wagner v. Baltimore, 239 U. S. 207; Stockdale v. Ins. Co., 20 Wall. 323. City of Seattle v. Kelleher, 195 U. S. 351; Ritchie v. Franklin Co., 22 Wall. 67; 112 U. S. 261.

A validating or curative statute may ratify or confirm only the acts it may authorize. Charlotte Harbor & N. Ry. v. Welles, 78 Fla. 227, 82 So. R. 770, 260 U. S. 8, 43 Sup. Ct. R. 3, 67 Law Ed. 100; Middleton v. St. Augustine, 42 Fla. 287, 29 So. R. 421, 89 Am. St. R. 227; 12 C. J. 1292; City of Jacksonville v. Basnett, 20 Fla. 525; Anderson v. City of Ocala, 83 Fla. 344, 91 So. R. 182; 12 C. J. 1094; 6 R. C. L. page 321; Katzenberger v. Aberdeen, 121 U. S. 172, 7 Sup. Ct. R. 947, 30 Law Ed. 911; State v. Fla. Inland Nav. Dist., 97 Fla. 839, 122 So. R. 249; 22 Fed. R. (2nd) 681; 172 U. S. 416; 6 R. C. L. 321; 25 R. C. L. 94; Munroe v. Reeves, 71 Fla. 612, 71 So. R. 922.

Chapter 12208, Acts 1927, provides that ''all proceedings, acts and things existing, done, had and taken by or under the authority of any board of county commissioners of any county * * * under Chapter 10145, for the purpose of carrying out any of the provisions thereof, including all assessments and all certificates of indebtedness, are hereby validated, ratified and confirmed, provided that any suits or actions heretofore brought and now pending, and any valid objections heretofore made and now pending before any such board of county commissioners, to assert any rights conferred by said Chapter 10145, shall not be affected by this Act.''

This statutory provision placed the assessments on the same plane as if they were made by the legislature, and thereby cured any mere irregularities in the assessments; but as the legislature could not put aside or override constitutional limitations, the confirmation by the statute of the assessments made does not prevent inquiry as to the constitutional validity of the assessments. To the extent, if any, that the assessments as confirmed by the statute may

be purely arbitrary and unreasonably discriminatory in amount, they violate both the due process and equal protection clauses of organic law and should not be enforced. Road Dist. v. Mo. Pac. R. R. Co., 274 U. S. 188, 47 Sup. Ct. R. 563, 71 Law Ed. 992; Standard Pipe Line v. Highway Dist., 277 U. S. 160, 48 Sup. Ct. R. 441, 72 Law Ed. 831; Berry v. Hardee, 83 Fla. 531, 91 So. R. 685, State ex rel. v. Bass, 96 Fla. 478, 118 So. R. 212.

If the road improvements, for which the certificates of indebtedness were issued predicated upon assessments made against abutting property, were primarily and essentially for the benefit of the abutting property, the entire cost, not to exceed benefits to abutting property, may be assessed and properly apportioned against the abutting property (A. C. L. v. Lakeland, on petition for re-hearing, 115 So. R. 669, 685) ; but if the road improvements were primarily and essentially for the benefit of the public, the entire cost of the improvements may not legally be assessed against the abutting property; and if the road improvements were for the benefit of the public and of the abutting property, the cost should be properly apportioned between the public and the abutting owners and also among the abutting owners. Parrish v. Hillsborough County, 98 Fla. 438, 123 So. R. 830, and authorities cited.

Reversed for appropriate proceedings.

TERRELL, C. J., AND ELLIS, STRUM AND BUFORD, J. J., concur.

BROWN, J., dissents.

BROWN, J. (Dissenting.)

My thought is that Chapter 10,145 is unconstitutional and void, and that consequently the proceedings had under

it could not be validated by the later act. This matter of special taxation can be carried too far, and I think this act is proof of it. There are limits beyond which the Constitution will not permit the legislature to go. It may delegate the taxing power to public or quasi-public corporations or bodies politic for public purposes, such as municipalities, counties or special improvement districts, but it cannot delegate such power to a mere private individual or group of private individuals, or to mere private corporations. Cooley on Taxation, 4th Ed., Secs. 74, 75, 78; 12 C. J. 842; State ex rel. v. Green, 116 So. R. 66.

This act in section I, provides that: "Whenever *the owner or owners of two thirds* of the property abutting on any public road, or any continuous portion thereof, shall present to the board of county commissioners of such county a petition duly signed by them asking that such public road be paved, graded and curbed, or paved, graded or curbed, *then it shall be the duty of such board* of county commissioners *to grant the said petition* and order the said public road or portion thereof to be paved, graded and curbed, or paved, graded or curbed, *as the petitioners may request;* the determination of said board as to the sufficiency of the petition shall be final and conclusive. After the improvement is completed the entire costs thereof shall be assessed against the abutting property * * * in proportion to the frontage of such public road."

There is not a word here as to whether the public interest requires the improvement, nor is a single cent of the cost to be borne by the public in any event. The work is to be financed by the issuance of paving certificates which shall constitute a lien upon the land of all abutting owners. The county is in no way liable. It is a scheme by which, not *two-thirds of the owners,* but the *owner* or

*owners* of *two-thirds of the abutting property,* if they wish it, can under the form of law, compel the other abutting owners to pay for putting down a pavement in front of their property whether they need it or not, or whether they want it or not; and although perchance it may be more for the general public benefit than their own, they must pay the *entire cost,* or lose their land; and although, perchance, the improvement is not called for by the public need at all, they are compelled by a public law to put it in at the behest of the owners of two-thirds of the frontage. Under this statute, one or two men, owning two-thirds of the abutting property, can compel fifty men, owning the other one-third, to do their bidding and pay for paving a road in front of their property against their will and possibly against their interests, even though there be no public need for such paving. For the plain and obvious meaning of the statute is that if the petition shows the very few things required by the statute and is signed by the owner or owners of two-thirds of the abutting property, it becomes the legal duty of the county board to grant the petition, and order the work done, and issue the paving certificates to pay for it. This duty is merely ministerial, and, if the act be valid, could be compelled by mandamus, for the statute itself prescribes what the petition shall contain. This is then, a delegation to individuals of the legislative and taxing powers.

This statute is to my mind also a clear invasion of those rights of property which are guaranteed by the declaration of rights contained in our state Constitution, and in the 14th amendment to the federal Constitution. Under the act, the special district is carved out by the petitioners, not by the legislature, nor the county board. The character of the grading, paving, and curbing, and hence the cost, is dictated by the petitioners; the county board cannot alter it. The total cost, though the road is public,

*must* be paid by the abutting owners, upon the sole basis of front footage. No matter how great the general public interest, the abutting owners must pay the entire cost of an improvement dictated by the private individual, or individuals, owning two-thirds of the abutting property, and that, too, without any preliminary hearing on the question of public need or private benefits. Thus the legislature does not create the special assessment district (for that is what it is); nor put any limitation upon the character or cost of the paving, or the amount which may be assessed. This is left to the will or caprice of those petitioners owning two-thirds of the frontage. Is this in keeping with our time-honored claim that ours is a government of laws, and not of men? Is all this cured by reason of the later provision in the act that, after the petition has been granted, and the work done, the owner is given an opportunity to appear before the board and question the "validity" of the paving certificate issued against his property? After the board has had the work done, there is no one who can be made to pay for it but the abutting owners, and if any certificate is held invalid, there is an irretrievable loss to the contractor or the holder of the certificate. In determining the objective, the work having already been done, some one must suffer. Is it at all likely that the county board would under such circumstances pay much attention to the objecting property owner? There is no protection in locking the stable door after the horse has been stolen. And, too, what, under this act does the "validity of the certificate" mean? If the petition describes the road, or the portion of it selected by the petitioners, sets forth the nature of the improvement, and is signed by the owners of two-thirds of the abutting property, and the petition has been granted by the board, the work done, the assessments made, and the notice published and mailed, all as required by the

statute, is not the certificate entirely "valid" under the statute? The statute makes no provision whatever for consideration of the questions of public necessity for the paving, or of benefit, or the lack of it, to the abutting owner. In fact, under the statute the county board has no right to consider these questions, and is given no discretion, if the petition is framed in accordance with the statute; nor is the abutting owner given any notice or opportunity to be heard as to the "validity" of the certificate until the work has been done and a debt created under the form of law which he must pay, and he alone, or it goes unpaid, or he loses his land by foreclosure—unless the bare possibility that the board will declare his certificate "invalid" is adequate protection. But, it is said, he may go into the courts for the protection of his rights. The answer is, *he has no rights* under this statute, and if he goes into the courts it must be upon the ground that the statute, or the procedure authorized by it, is unconstitutional, or has violated his constitutional rights. Should such a statute be upheld by the courts? Is it not dangerous to the right of private property?

It seems to me that a statute dealing with improvements to *public* roads should levy some part of the cost upon the *public,* or should make some provision whereby this can be done, where it is made to appear that the benefit is *primarily* public and only *incidentally* private. And if the public is not concerned—if the purpose of the improvement is not *in any degree* a public purpose, there is no occasion to exercise public authority and the power to tax cannot be invoked. It might be said in reply to this, that this statute deals with improvements to *public* roads, which is *prima facie* a public purpose. That is true, but the statute places the entire burden of a public work upon a few individuals, and then not according to the special benefits conferred, and without requiring any showing whatever to be made that.

*any* special benefits will be conferred; and all this at the dictation of a group of private individuals, for it is they the petitioners, and they alone, who, exercising legislative power, carve out the district and prescribe the nature of the improvements. The county board is given no discretion or supervision whatever. Such a statute is essentially tyrannical, unjust and, in my opinion, unconstitutional. Browning v. Hooper, 269 U. S. 396, 70 Law Ed. 330; Embree v. K. C. & L. B. Road Dist., 240 U. S. 242, 60 L. Ed. 624; Purdy v. Ft. Myers, 87 Fla. 428, 100 So. R. 366; Burnett v. Green, 122 So. R. 570; Eubank v. Richmond, 226 U. S. 137, 57 Law Ed. 156; Board of Commissioners v. Abbott (Kan.), 34 Pac. R. 416; 19 C. J. 606; O'Brion v. Wheelock, 184 U. S. 450, 46 Law Ed. 636; Stewart v. Daytona & New Smyrna Inlet Dist., 114 So. R. 545; Morton v. Holes (N. Dak.), 115 N. W. 258; A. C. L. Ry. Co. v. Lakeland, 115 So. R. 669, 94 Fla. 386; City of Ft. Myers v. State, 117 So. R. 97, 95 Fla. 704. I realize that this court has held in the Lakeland case, *supra*, that the legislature may prescribe a plan of assessment of the cost of street improvements made by a municipality whereby the entire cost may be assessed against the abutting property specially benefited, although there may be some benefit accruing to the public, so long as the special and peculiar benefits to the property bearing the burden are substantially proportionate and equal to the assessment laid by the municipal authorities. But there the court was dealing with a responsible political or governmental subdivision or agency, which represented the public interests and exercised a delegated legislative power in selecting the street to be paved, the kind of pavement and the cost thereof. But here the statute vests that power in private individuals, and when this is done (if it can be constitutionally done, which I do not admit) surely the statute should require a preliminary showing before some public authority, of public need and of benefits accruing to the

abutting property equal to the burden to be imposed, before allowing the work to be ordered and done and the entire burden impressed as a lien upon the abutting property, whether it is benefited proportionately or otherwise. Especially should this preliminary showing to be required as to a statute which by its terms applies to *any* public road or any portion thereof outside of municipal boundaries, and which, on its face, might be attempted to be applied to roads in rural sections, where, as we have recently held, the front-foot rule cannot be constitutionally applied. Parrish v. Hillsborough County, decided during the present term.

The case of Embree v. R. C. & L. B. Road Dist., 240 U. S. 242, 60 L. Ed. 624, has been cited as opposed to these views, but in that case the statute as construed by the court did provide for a preliminary hearing and an opportunity to be heard on the question of benefits before the county court, before the petition for creating the district was granted. In that case, the court, speaking through Justice VAN DE VANTER, said:

"As the district was not established by the legislature, but by an exercise of delegated authority, there was no legislative decision that its location, boundaries, and needs were such that the lands therein would be benefited by its creation and what it was intended to accomplish, and, this being so, it was essential to due process of law that the land owners be accorded an opportunity to be heard upon the question whether their lands would be thus benefited. If the statute provided for such a hearing, the decision of the designated, tribunal would be sufficient, unless made fraudulently or in bad faith. Fallbrook Irrig. Dist. v. Bradley, 164 U. S. 112, 167, 174, 175, 41 L. Ed., 369, 391, 394, 17 Sup. Ct. R. 56."

This statute, by its terms, would permit the assessment of the total cost of paving a public road or some portion thereof against abutting rural lands, according to the front foot rule. We have held in the recent case of Parrish v. Hillsborough County that this cannot be done, and that such a statute can only be constitutionally applied to lands that are urban in their nature and character though located beyond municipal limits. This ruling is supported by a strong Pennsylvania case; Seeley v. Pittsburg, 82 Penn. St. 360, 22 Am. R. 760; Elliot on Roads and Streets, 4th Ed., Sec. 672, 688, note 22, and cases cited. The bill in this case does not show with sufficient certainty the nature and character of the lands involved, so as to show the constitutional applicability of the statute in this regard.

This statute undertakes to institute *property* rule, rather than majority rule, in that it authorizes the owner or owners of two-thirds of the abutting property to determine the bounds of the special district and the character of the improvements, and that, too, without any hearing, and may thus compel a number of owners of small estates abutting the road to submit to the making of the improvements and assessment for the full cost thereof according to their frontage. Is that not a denial of due process and equal protection of the laws, which are guaranteed to every citizen, whether he be rich or poor?

I do not think we need consider the so-called validating act. The legislature cannot by a subsequent act breathe life into a statute which is constitutionally dead; it cannot by two acts do, contrary to the constitution, what it could not do by one; it cannot, by a series of acts, contrive any device which would destroy the constitutional guarantees which protect the fundamental personal and property rights of the citizen.

The conclusion seems to be inescapable that by this act the legislature has abdicated its powers of legislation and taxation by delegating to private citizens the authority to select property for taxation and to establish taxing districts. And as to denial of due process, permit me to quote from the opinion of Mr. Justice BUTLER in Browning v. Hooper, *supra* which is to a large degree applicable to this case: "Here, on the initiation of individuals signing the petition, a special district was carved out to furnish credit and to pay for specified improvements on designated roads wholly within the territory selected. * * * The Legislature did not create the road district, levy the tax nor fix the amount to be raised. * * * There is nothing in the law to guide or limit the action of the signers of the petition in selecting the property to be assessed. Subject to the vote of a district of their own choice, the petitioners' designation is absolute. The commissioners' court has no power to modify or deny; it is bound to grant the petition. * * * It is essential to due process of law that such owners be given notice and opportunity to be heard on that question (of benefits) where, as here, the district was not created by the legislature, and there has been no legislative determination that their property will be benefited by the local improvement. Appellants were denied all opportunity to be heard. No officer or tribunal was empowered by the law of the state to hear them, or to consider and determine whether the road improvements in question would benefit their lands. The act is repugnant to the due process of the 14th amendment."

It seems to me that these principles are in the main applicable here, and that in this case, as in the one quoted from, Chapter 10145 should be held unconstitutional and void.

If the subsequent act can be construed as an attempt to validate the assessments, this might, under the rule laid down in Road Imp. District v. Mo. Pac. R. Co., cited in the majority opinion, confirm more irregularities in the method of imposing the assessments, but I do not see how this would reach the root of the matter, for it would not supply the condition precedent to the authority for making the assessments at all, that is, the lawful establishment of the improvement district. If this basic lack of authority could be supplied by a subsequent legislative validating act, which is doubtful, the validating act herein question is not broad enough in its terms to accomplish such purpose.