DANIEL T. UTLEY and MATILDA J. UTLEY, joined by her husband DANIEL T. UTLEY, R. J. McCUTCHEON, JR., ADDIE L. MILLER, wife of M. P. MILLER, W. A. MILLER, R. L. MILLER and ELIZABETH BELL, *nee* ELIZABETH MILLER, wife of W. J. BELL, *Appellants*, vs. CITY OF ST. PETERSBURG, a municipal corporation, *Appellee.*

144 So. 53.

Division A.

Opinion filed September 17, 1932.

*L. D. Martin,* for Appellants;

*Earle B. Askew* and *Carroll R. Runyon,* for Appellee.

BUFORD, C.J.—On the 20th day of June, 1929, the appellants exhibited their bill of complaint in the Circuit Court in and for Pinellas County, Florida, to enjoin the

City of St. Petersburg from bringing any action, either at law or in equity, against the complainants or against the property of the complainants to enforce the payment of certain "whiteway" assessments and certificates described in the bill of complaint and to procure a decree holding such assessment and certificates and the lien claimed therein to be null and void and to cancel the same as a cloud on the title of the complainants, and for such other relief as might appear proper.

The assessment complained of appears to have been made in 1924.

The appeal is from final decree dismissing the bill of complaint. The City based its right to make the assessment under the provisions of chapter 9914, Acts of 1923, and further contends that the assessments complained of were validated by the provisions of chapter 14392, Acts of 1929 and chapter 15511, Acts of 1931, The Act of 1923 referred to was entitled:

"AN ACT Providing a Supplemental, Additional and Alternative Method of Making Local Improvements for the City of St. Petersburg, a Municipal Corporation, Authorizing and Providing for Special Assessments for the Cost Thereof, and Authorizing the Issuance and Sale of Bonds for such Municipality."

Section 24 of the Act provided as follows:

"The term 'local improvements' as referred to in section 1 of this Act, shall be construed to mean the following improvements and no others, namely:

(a) Streets, highways, boulevards, avenues, squares, lanes, alleys and parks, or any part thereof, may be opened, reopened, widened, graded, regraded, paved, repaved, surfaced, resurfaced, and curbs and gutters may be constructed or reconstructed therein.

(b) Sanitary sewers, storm sewers, and other drains or sewers may be laid or relaid, and constructed or reconstructed in any street, highway, boulevard, avenue, square, lane, alley or park."

This section of the Act limited its application to those improvements named in the above quoted section and it will be readily observed that the improvement here under consideration was not included but was specifically excluded from the purview of that Act.

A whiteway system may be held to be a street improvement but it is not a street improvement within the limitations prescribed in section 24, supra, and for that reason we cannot apply the legal enunciations contained in the opinion in the case of Fisher et al. vs. City of Astoria, 126 Oregon 268, 269 Pac. 853, in which the court said:

"It will be noticed that section 72 of the charter confers authority upon the city to 'grade, pave, plank, gravel, curb and otherwise improve and repair' the streets. The plaintiffs contend that under the familiar rule of ejusdem generis, the words 'otherwise improve' mean construction work of a type similar to that designated by the specific words which preceded them. But section 72 carries with it a dictionary of some of its words; it defines paving and assigns to it a meaning beyond its ordinary significance. The definition carried in the act requires paving to include the construction of cross-walks, gutters, and curbs. The act, in defining the word 'improve' clearly indicates that the legislature did not intend that the rule of ejusdem generis should be applied to this word, for it expanded its significance beyond the specific words which preceded it. Thus it defines 'improve' as follows: It 'includes the power and authority to improve the sidewalks and pavements and to determine and provide for everything convenient and necessary concerning such improvement.' Such being the legislative fiat, we cannot apply the rule of ejusdem generis without disregarding the legislative intent. Hence we must ignore that principle of construction and assign to the words 'otherwise improve' their ordinary implication. It will be observed that after the authors of section 72 had conferred authority to grade, pave, plank, gravel and curb

streets, they evidently anticipated that circumstances might present themselves which would render it desirable to improve the streets in some other manner. They therefore conferred not only authority to do the foregoing but also power to 'otherwise improve'; indicating thereby that they were conferring power to do something more than pave, grade, etc., the streets. It seems natural that the authors of the charter, who saw fit to confer upon the city authority to construct such an expensive improvement as the paving of a street and authority to assess property the cost thereof, would also desire that the city should possess authority to install any other improvement that might be necessary to adapt the street to the needs of traffic.

In that case, however, it was said:

"We come now to the problem, Does the charter confer upon the city authority to install such an improvement and assess the adjoining property for the cost thereof? Unless the authority is conferred in the charter, the city does not possess it, for a charter is a grant of authority and not a limitation upon it. Dillon, Municipal Corps. (5th ed.) No. 237; McGillin, Municipal Corps. ## 320, 321. We have carefully read all portions of the charter which might possibly confer the alleged authority and find that section 72 is the only subdivision which is directly applicable. Portions of the charter which confer authority only to install improvements are not sufficient because the city desires to tax the cost of the improvement to the property in the district. A grant of power to improve a street does not carry with it power to assess the expenses thereof to the adjacent property. Ivanhoe v. Enterprise, 29 Ore. 245, 45 P. 771, 35 L. R. A. 58; Page & Jones, Taxation by Assessment, No. 775.

Hence, we are confined in our search to those portions of the charter which confer both power of improvement and power of assessment."

The rule appears to be now well settled in this jurisdiction that "assessments for paving are justified only on basis of special and positive benefits" and the same rule

must necessarily apply to any other public improvements for which special assessments may be made. City of Ft. Myers vs. State, 117 Sou. 97, 95 Fla. 704; Summerland, Inc. vs. City of Punta Gorda, 134 Sou. 611, 101 Fla. 543; Warden Apt. House vs. City of Punta Gorda, 134 Sou. 614, 101 Fla. 550.

It is also settled in this jurisdiction that:

"Where the special or peculiar benefits are substantially equal to the special assessment, the legislative authority in apportioning the cost to be borne by the property specially benefited may impose the entire reasonable and proper cost of the improvement upon such property even though a secondary or incidental benefit may also result to the public.

If the situation is reversed and the incidental benefit results to the property improved and the primary benefit to the public, to require the abutting property to bear the entire expense would amount to an arbitrary and unwarranted servitude which cannot be imposed." City of Ft. Myers vs. State, supra; Parrish v. Hillsborough County, 98 Fla. 430, 123 Sou. 830; Smith Bros. Inc. vs. Williams, et al., 100 Fla. 642, 126 Sou. 367.

The record discloses that there was never any determination by municipal authorities of special benefits accruing to the property involved in this suit, and, therefore, there was no determination of any benefits accruing to the owners of such property by reason of the improvement.

The resolution under which the work was authorized contained the following statement in this connection only:

"Be it further Resolved, That the Commissioners of the City of St. Petersburg shall have the right to assess against the abutting property on each side of the streets, or parts of streets, avenues, or parts of avenues or alleys so improved, the whole or any part of the expenses of such improvement in accordance with the benefits derived therefrom."

The Ordinance referring to that Resolution is as follows:

"WHEREAS, by Resolution duly passed by the Board of Commissioners of the City of St. Petersburg, Florida, in adjourned regular session the 11th day of February A. D. 1924, a White-Way System on West Central Avenue and Park Street was ordered constructed, and duly advertised as required by law, the Mears Wright Electric Company, St. Petersburg, Florida, having received the contract for said work, and

WHEREAS, the said work having been completed under the said contract, and the Director of Public Works having made and filed his report in writing as to the total cost of said work, which said report is now on file in the office of the Director of Finance, and the City having accepted the same, and

WHEREAS, Notice having been given to the owners of the property herein assessed of the cost of said improvement, and no legal complaints to the assessment of same having been offered within the time specified in said notice,

NOW, THEREFORE, THE CITY OF ST. PETERSBURG DOES ORDAIN:

Section 1. That the sum set after the description of the property be and the same is hereby assessed against the said, Complainants' Exhibit 'K,' property."

Then follows the description of the property with the assessments thereon.

Then follows section 2 of the Ordinance, as follows:

"That on or before Thirty (30) days after the passage of this Ordinance, the owners of the property herein assessed shall have the right to pay the entire amount of the assessment in cash. The Director of Finance shall issue and file lien Certificates of Indebtedness against the said property herein assessed and *remaining* unpaid on the 4th day of February, 1925, for the amount of the assessment plus the cost of issuing and recording.

Passed the 1st day of December, A. D. 1924 on its first reading.

Passed the 16th day of December, A. D. 1924, on its second and third readings.''

The record discloses that there was no determination of the question of special benefits to the property involved by the constituted authority of the City of St. Petersburg and that there was no law under which the City of St. Petersburg was authorized to make such assessments. We next come to the question of whether or not Acts of 1929 and 1931 above referred to were sufficient to constitute a determination of benefits and to validate the unlawful assessment which had been made. We say, ''unlawful assessment'' advisedly because the City could not maintain that it possessed such authority when section 24 of chapter 9914, Acts of 1923, specifically provides that special assessments may be made to procure funds for certain improvements therein named and *''no other.''*

Chapter 14394, Acts of 1929, provides:

''That all proceedings in the assessment and levy of taxes levied and imposed by the City of St. Petersburg on property taxable by it to and including the taxable year 1928, as also all taxes assessed and levied by said City of St. Petersburg on property taxable by it for each taxable year up to and including the taxable year 1928 be and the same are hereby ratified, validated and confirmed.

All laws and parts of laws in conflict herewith be and the same are hereby repealed.

Chapter 15511, Acts of 1931, provides as follows:

''That all special assessments levied and imposed by the City of St. Petersburg, and also all certificates of indebtedness issued by the City of St. Petersburg prior to this Act becoming effective, be and the same are hereby ratified, validated and confirmed.

This Act shall become effective immediately upon its passage and approval by the Governor, or upon its becoming a law without such approval.''

Neither of these legislative Acts contains any determin-

ation of special benefits and, therefore, they are ineffective to validate a special assessment which was made without any authority of law and in the making of which there was no determination by the municipal authorities of the question of benefits accruing to the property involved.

It may be that the 1931 Act above quoted would be sufficient to validate a special assessment and the certificates issued thereon where such assessment had been duly authorized, but the procedure provided by statute had not been complied with by the municipal authorities in making the assessment and issuing the certificate.

Aside from what has been said, the record shows that in the improvement here under consideration the primary benefit was to the public and that only an incidental benefit, if any at all, accrued to the property assessed.

The bill of complaint alleges:

"The property of your orators hereinbefore described abuts on the North and South sides of Central Avenue and lies in a natural depression or swamp that it was before said whiteway was constructed below the level of Central Avenue and that the said land, at the time of the construction of said whiteway was capable of being used for no other purpose than farm land, but that it was not being used for any purpose at the time; that it is now, at this time, being used as farm land but has been unprofitable and it is the intention of your orators to abandon it as farm land at the end of the present calendar year.

Your orators further allege that the only way in which sufficient income could possibly be derived from the aforesaid land described in the Certificate of Indebtedness in paragraph IV hereof to pay the attempted assessment would be to fill in the land and bring it up to the level of Central Avenue, or approximately to the level of Central Avenue, in order that it might at some time be used for building purposes and to divide it into lots, blocks, streets, and alleys and sell the same.

Your orators further allege that in order to put the land in condition that it could bear the burden of the assessment hereinbefore described that it would be necessary to spend very large sums of money in filling the same and further that the material for such filling could not be obtained near at hand but would have to be transported several miles and that to fill all of the land of your orators, hereinbefore described in paragraph III hereon, to the level of Central Avenue would cost in excess of $100,000.00, and your orators allege that the aforesaid assessment was arbitrarily made and that your orators, in fact, derived no benefit whatsoever from the said whiteway and that the value of their said land has not been enhanced in any way from the construction of the said whiteway and that their land is not receiving and has not received any benefit from same.''

The evidence supports and does not contradict these allegations.

For the reasons stated, the decree appealed from should be reversed with directions that a decree be entered granting the relief prayed for in the bill of complaint. It is so ordered.

Reversed.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND DAVIS, J., concur in the opinion and judgment.

TERRELL, J., not participating.

WHITFIELD, J. (Concurring).—Whiteway street lighting is not among the municipal street improvements for which special assessments are authorized by Chapter 9914, Acts of 1923, therefore certificates of indebtedness issued on such assessments are unauthorized and cannot be enforced unless the assessments and certificates are validated by effective statutes.

A validating act cannot give vitality to special assessments that the Legislature cannot legally authorize.

A legislative assessment by validation is illegal if it is in violation of or in excess of organic provisions and limitations designed to protect property rights. Under the organic provisions securing property rights against undue governmental burdens, special assessments cannot lawfully be enforced in excess of benefits accruing to the property assessed, unless such organic rights to resist illegal or excessive assessments are lost to the owner of the property by waiver, acquiescence or estoppel. Where street improvements, such as whiteway street lighting in a municipality, are primarily for the benefit of the public and only incidentally enhance the value or uses of contiguous property, the entire cost of the improvements cannot lawfully be specially assessed against such property, because the excess assessment would in effect if collected take private property for public use without just compensation in violation of the constitution. Section 12, Declaration of Rights.

Chapter 14392, Acts of 1929, does not purport to validate any special assessments levied or any certificates of indebtedness issued, that are illegal for want of authority or for other fundamental defect; but such act merely remedies procedural defects by providing that such assessments and certificates ''are ratified and confirmed, any *irregularity or imperfections* in any of the proceedings prior to or in the levying and imposition of such assessments and/or the issuance of such certificates of indebtedness to the contrary notwithstanding.'' A like effect should be given to Chapter 15511, Acts of 1931, which purports to validate all special assessments levied and all certificates of indebtedness theretofore issued by the city, because it is not within the power of the legislature to validate any assessment that violates the organic rights of the property owner. An assessment conflicts with organic law when it is contrary to or in ex.

cess of the limitations imposed upon the legislative power by the provisions of the constitution which secure property rights against invasion, except when just compensation is made for property taken for public use and when due process and equal protection of the laws are afforded in making special assessments. Validating acts in effect make legislative assessments; but such statutory assessments are subject to the organic rights of the owner of the property. If any certificates of indebtedness predicated upon an assessment that has been validated by statute, is illegal or excessive in amount, thereby violating the organic rights of the owner of the property so assessed, and such organic rights have not been waived, appropriate relief may be decreed upon proper proceedings showing the amount that may be validly imposed for benefits to property at the time the improvements were made.

DAVIS, J., concurs.