**THOMAS HOWELL SCOTT, as Executor of the Estate of Lucian W. Smith, deceased, et al., v. ROBERT SCOTT.**

30 So. (2nd) 620               January Term, 1947
April 25, 1947                   En Banc
Rehearing denied June 20, 1947

*Reeves, Allen & Johnson,* for appellants.

*Mabry, Reaves, Carlton, Anderson & Fields* and *H. D. Wentworth,* for appellee.

PER CURIAM:

The decree is affirmed on authority of Webb v. Scott, 129 Fla. 111, 176 So. 442.

Affirmed.

THOMAS, C. J., TERRELL, BUFORD, and ADAMS, JJ., concur.

CHAPMAN and BARNS, JJ., dissent.

BARNS, J., dissenting:

The plaintiff-appellee brought his bill to foreclose a paving certificate issued by the County Commissioners of Hillsborough County under Chapter 10145 (Acts 1925).

The Chancellor at final hearing on the pleadings and evidence entered a final decree for the plaintiff for the full amount of the certificate together with eight per cent interest.

The appellant-defendant brings this his appeal and assigns as error that:

"(1) The Chancellor erred in holding that the suit was not barred by the statute of limitations of three years (95.11 F.S.A.);

"(2) The Chancellor erred in holding that the paving certificate sued on was valid and enforceable;

"(3) The Chancellor erred in ignoring and disregarding the 'undisputed evidence of the public benefit and the lack of benefit to the property in question.' "

These assignments of error relate to issues squarely raised by the pleadings.

As to the first assignment of error, the limitations of time for the enforcement of special improvement liens are well covered by 103 A. L. R. 885 and 136 A. L. R. 885 but our statute seems to make all taxes (whether general or special) a lien until paid to-wit:

"All taxes imposed pursuant to the constitution and laws of this state shall be a first lien superior to all other liens on any property against which such taxes have been assessed which shall continue in full force and effect until discharged by payment . . . " Sec. 192.21 F.S.A.

Such being the case there is no question here as to which portion of 95.11 F.S.A. is to be applied.

The second and third assignments of error relate to the validity of the certificate and the extent of their validity and enforceability as against appellant's property.

*Chapter* 10145 provided that (1) upon petition of the owners of 2/3 the property abutting on any "public road" that the County Commissioners shall pave, grade or curb same as the petitioners "may request"; that *"after* the improvement is completed the entire costs thereof shall be assessed against the property abutting upon said public road or portion whereof so paved, graded or curbed in proportion to the frontage of such public road"; and

(3) That the County Commissioners "as soon as said assessment is made shall issue certificates of indebtedness for the amount so assessed against the abutting property; but "none of said certificates shall be disposed of by the Board of County Commissioners until thirty days after the same shall have been entered in a public road improvement lien book" and furthermore,

(4) Before issuing any of said certificates "the County Commissioners" shall give notice by advertising once a week for four weeks in some newspaper of general circulation published in said County of the amount of said certificates proposed to be issued; the general notice of the work done; the description of the property covered by said certificate, the

name of the owner of the legal title thereof; if known," etc.; that *"anyone* having an interest in such property may at any time within thirty days from the giving of such notice appear before the Board of County Commissioners at any meeting thereof and make any valid objection to the issuance of such certificate or the amount thereof. The Board shall after a hearing upon such objection determine its validity. If no objection shall be made the certificate shall be conclusive and not subject to attack"; and that

(5) "As soon as practical and within thirty days after the issuance of any certificate of indebtedness" shall cause the same to be entered in a book kept for that purpose and called the Public Road Improvement Lien Book.

A petition for the improvement of the road was filed with the County Commissioners on September 18, 1925, specifying that the road should be paved for a width of twenty-two (22 ft.) feet; on the same day the County Commissioners passed a resolution specifying that said public road should be paved for a width of twenty-four (24 ft.) ; on December 4, 1925, the County Commissioners let a contract for the improvement and work was begun on December 11, 1925, and completed on June 11, 1926.

On March 4, 1927, the County Commissioners passed a resolution (a) determining and finding the entire costs of the improvement at $18,062.21 and assessing same against the abutting property on said road; (b) ordered publication and mailing of a *notice* reciting what had been done and *"that objection to the issue of certificates may be made before this Board at any meeting thereof,* within thirty days."

On May 6, 1927, the County Commissioners passed a resolution finding that the road had been improved in accordance with and pursuant to the petition filed; that the assessment therefore had been made "according to law" and all notices required by law had been duly given, by publication and by mailing, etc.; that no objection to the issuance of any certificate had been made; that the clerk be directed to issue the certificates and within thirty days after issuance to record item in "Public Road Improvement Lien Book 2" and to deliver them to Cone Brothers Construction Company in pay-

ment of its work on said road within said time redeemed said certificate.

On January 13, 1925, the owner of the property involved here made and there was recorded a mortgage, and it is through the foreclosure of this mortgage that appellant claims title.

The resolution directing that notice for a hearing on this special assessment passed on March 4, 1926, did *not* specify the time and place when the Board would sit to hear such objection nor the time and place when the Board would sit to receive such objections and it is not to be presumed that the notice given pursuant to such resolution was any more definite than the resolution in this respect.

*Validating and Curative Acts:* Chapter 12208 Acts of 1927 repealed Chapter 10145 but continued it in effect as to all proceedings therefore commenced and provided that:

"All proceedings, acts and things existing, done, had and taken by or under the authority of any board of County Commissioners, . . . . under said Chapter 10145, for the purpose of carrying out any of the provisions thereof, *including all assessments and all certificates of indebtedness* are hereby validated, ratified, and confirmed." And in Webb v. Scott 129 Fla. 111, 176 So. 442; this Court held that the legal effect of Chapter 12208 was that of making the prior assessment of the County Commissioners a legislative assessment.

The force and effect of validating acts seems to be well stated by the following headnotes, to-wit:

"As a general proposition, what the Legislature could have authorized it can ratify, if it can authorize at the time of ratification.—Charlotte Harbor & N. Ry. Co. v. Welles, 43 S. Ct. 3, 260 U.S. 8, 67 L. Ed. 100, affirming decree (1919)."

"Legislature may ratify any act that it could have authorized.—U. S. Fidelity & Guaranty Co. v. Highway Engineering & Construction Co., 51 F. (2nd) 894, cert den 52 S. Ct. 43, 284, U. S. 669, 76 L. Ed. 566.

"Validating or curative statute may ratify or confirm only acts it may authorize.—Smith Bros. v. Williams, 126 So. 367, 100 Fla. 642, followed in Smith Bros. Const. Co. v. Hart, 126 So. 373, 101 Fla. 653, aff (1931) 136 So. 399, 101 Fla. 653,

and foll (1930) Hillsborough County v. Jeffords, 126 So. 373, 101 Fla. 654.

"Statute may validate previous administrative assessments or other proceedings so far as they do not violate Constitution.—Smith Bros. v. Williams, 126 So. 367, 100 Fla. 642, followed in Smith Bros. Const. Co. v. Hart, 126 So. 373, 101 Fla. 653, aff (1931) 136 So. 399, 101 Fla. 653 and foll (1930) Hillsborough County v. Jeffords, 126 So. 373, 101 Fla. 654."

"Legislature by validating act, could validate drainage assessment to same extent that it could have authorized and fixed assessment by act creating drainage district. — Dover Drainage Dist. v. Pancoast, 135 So. 518, 102 Fla. 267."

Limitations on Curative and Validating Acts:

"Statutes may authorize highway improvements entirely at expense of abutting property primarily benefitted, if benefits are properly apportioned and at least equal assessment.—Parrish v. Hillsborough County, 123 So. 830, 98 Fla. 430, 436."

"Highway improvement assessments against abutting property must be fairly apportioned and lawfully made.—Parrish v. Hillsborough County, 123 So. 830, 98 Fla. 430, 436."

"If road improvements are for benefit of public and of abutting property, costs should be properly apportioned between public and abutting owners.—Smith Bros. v. Williams, 126 So. 367, 100 Fla. 642, followed in Smith Bros. Const. v. Hart, 126 So. 373, 101 Fla. 653, aff (1931) 136 So. 399, 101 Fla. 653, and foll (1930) Hillsborough County v. Jeffords, 126 So. 373, 101 Fla. 654."

"It has been uniformly held that the exercise of the power of the legislature to validate, by retrospective statutes, defective tax proceedings is subject to the same constitutional limitations as the exercise of any other legislative power."

"Smith Bros. v. Williams (1930) 100 Fla. 646, 126 So. 367 (assessment for road improvements); New Smyrna Inlet Dist. v. Esch (1931) 103 Fla. 24, 137 So. 1, 138 So. 49 (special assessment); Davis v. Clearwater (1932) 104 Fla. 42, 139 So. 825; Utley v. St. Petersburg (1932) 106 Fla. 692, 144 S. 53 (concurring opinion of Whitfield, J.)." 140 A. L. R. 972, 973.

"From this proposition the rule evolves that the legislature cannot cure retrospectively what it could not have previously authorized or done prospectively," "Smith Bros. v. Williams (1930) 100 Fla. 642, 126 So. 367 (assessment for road improvement); New Smyrna Inlet Dist. v. Esch (1931) 103 Fla. 24, 137 So. 1, 138 So. 49 (special assessment); Utley v. St. Petersburg (1932) 106 Fla. 692, 144 So. 53 (concurring opinion of Whitfield, J.)." 140 A. L. R. 973.

"With respect to assessments for betterments or local improvements, it has been held that failure of tax authorities to give notice of an assessment can be remedied by a retrospective statute, the courts proceeding upon the theory that the legislature, without giving the taxpayer notice and hearing, could in the first place have levied the assessment itself, subject only to the right of the assessed landowner to have an arbitrary abuse of that power reviewed by the courts, and that it can therefore adopt as correct the assessment made by the tax officials, treating the act of adoption as a reassessment of the lands by the legislature rather than as a curative statute."

"Webb v. Scott, 129 Fla. 111, 176 So. 442 (assessment for street improvements); Lots No. 1685 v. DeFuniak Springs, 127 Fla. 348, 174 So. 29 (assessment for street improvements)." 140 A. L. R. 1002.

Limitations as to apportionment of benefits:

"Where an assessment is so arbitrary, excessive, disproportionate, or discriminatory as to violate the due process or equal protection or similar clauses, or other provisions, of the Federal or State Constitutions, designed to produce equality and uniformity of taxation, the defect is beyond the reach of curative legislation." "Smith Bros. v. Williams (1930) 100 Fla. 642, 126 So. 367 (assessment for road improvements); Dover Drainage Dist. v. Pancoast (1931) 102 Fla. 267, 135 So. 518 (drainage assessments); Davis v. Clearwater (1932) 104 Fla. 42, 139 So. 825 (paving assessments); Utley v. St. Petersburg (1932) 106 Fla. 692, 144 So. 53 (special assessments in excess of benefits); Utley v. St. Petersburg (1932) 107 Fla. 6, 144 So. 58 (assessments for street improve-

ments); Jones v. Arcadia (1941) 147 Fla. 571, 3 So. (2) 338, (dictum)." 140 A. L. R. 978.

Limitations as Hearing:

"*Lack of Notice or Opportunity for Hearing.*—Defects in tax assessments arising from lack of notice and opportunity for hearing cannot be remedied by a curative statute, where such notice or opportunity for hearing is essential to due process of law, as guaranteed by the Federal and state Constitution. It would seem that where statutory requirements, other than in express terms providing for notice and hearing, are designed, or are construed by the courts to be designed, to afford a taxpayer an opportunity for the examination of his grievances with respect to the assessment of a tax, a failure of tax officials to comply with such requirements may not be cured by retrospective legislation, where this would indirectly deprive the taxpayer of the opportunity to be heard. However, even lack of notice and hearing may be cured by retrospective legislation which itself affords the taxpayer an opportunity to be heard after its passage, although the time originally designated for notice and hearing then may have expired. Where notice and hearing at a particular stage of tax proceedings have not been afforded, but are deemed by the court not to be required by constitutional commands, the defect may be curable by retrospective legislation." 51 Am. Jur. Sec. 739.

"Hearing respecting validity and reasonableness of assessment for public road improvements should be had before improvement is provided or assessment made, where projects are designated by petition (Acts 1925, c. 10145, Sec. 4).— Smith Bros. v. Williams, 126 So. 367, 100 Fla. 642, followed in Smith Bros. Const. Co. v. Hart, 126 So. 373, 101 Fla. 653, aff (1931) 136 So. 399, 101 Fla. 653, and foll (1930) Hillsborough County v. Jeffords, 126 So. 373, 101 Fla. 654."

But the hearing may be by the administrative or the judicial process:

". . . There is no constitutional privilege to be heard in opposition at the launching of a project which may end in an assessment. It is enough that a hearing is permitted before the imposition of the assessment as a charge upon the

land (Chicago, M., St. P. & P. Ry. Co. v. Risty, 276 U. S. 567; Londoner v. Denver, 210 U. S. 373, 378; Goodrich v. Detroit, 184 U. S. 432, 437), *or in proceedings for collection afterwards.* Hagar v. Reclamation District No. 108, 111 U.S. 526, 537; Wells, Fargo & Co., v. Nevada, 248 U. S. 165."

The case of Londoner v. Denver 210 U. S. 373, is a case relating to special improvement tax liens where a petition[1] was required as a condition to the commencement of proceedings by municipal authorities for the municipal improvements and the assessment of improvement tax liens for benefits and the statute involved required that the city clerk publish

"A notice stating, inter alia, that the written compliants or objections of the owners, if filed within thirty days, would be 'heard and determined by the city council before the passage of any ordinance assessing the cost.' . . . " Londoner v. Denver 210 U. S. 373, 380, 381.

And the opinion recites that:

". . . The notice given in this case, although following the words of the statute, did not fix the time for hearing, and apparently there were no stated sittings of the council acting as a board of equalization. . . ." Londoner v. Denver (supra).

And the holding of the Court was:

". . . Due process of law required that at some stage of the proceedings before the tax becomes irrevocably fixed, the taxpayer shall have an opportunity to be heard, of which he must have notice, either personal, by publication, or by a law fixing the time and place of the hearing. Hagar v. Reclamation District, 111 U.S. 701; Kentucky Railroad Tax Cases, 115 U.S. 321; Winona & St. Peter Land Co. v. Minnesota, 159 U.S. 526, 527; Lent v. Tillson, 140 U.S. 316; Glidden v. Harrington, 189 U.S. 255; Hibben v. Smith, 191 U.S. 310; Security Trust Co. v. Lexington, 203, U.S. 323; Central of Georgia v. Wright, 207 U.S. 127.

". . . But even here a hearing in its very essence demands that he who is entitled to it shall have the right to support

---

1.—"If it chose to exact a petition as a security for wise and just action it could, so far as the Federal Constitution is concerned, accompany that condition with a provision that the council, with or without notice, should determine finally whether it had been performed." Londoner v. Denver, (supra).

his allegations by argument, however brief, and, if need be, by proof, however informal. Pittsburg &c. Railway Co. v. Backus, 154 U.S. 421, 426; Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 171, et seq." Londoner v. Denver, 210 U.S. 373, 385, 386.

It appears from the foregoing that the special improvement tax assessment involved here was one as to which the assessment is constitutionally limited by the extent of benefits conferred by such improvement; and that an owner of property so taxed will not be conclusively bound by the assessment until he is given adequate notice as to the time, place and purpose, and an opportunity to be heard as to such by some authority with power to determine the extent of such benefits; and that it is immaterial whether such hearing be before the authorities imposing the assessment or other competent agency or before the court when the assessment lien is sought to be enforced.

There is respectable authority to the effect that special assessments equal to the cost of local improvements may be assessed against lands in the immediate vicinity of the work and that such costs may be assessed without regard to benefits and that the "due process" is met when the costs are equitably apportioned. See French v. Barber Asphalt Paving Co., 181 U.S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879.

*Florida's policy.* Contrary to the view above stated, there is a line of authorities to the effect that special assessments of taxes for local improvements are limited to the peculiar or special benefits to the property by reason of the improvements and that the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation. See dissenting opinion, French v. Barber Asphalt Paving Co. (supra) and Norwood v. Baker, 172 U.S. 269.

In the laguage of Justice Ellis in the case of A. C. L. v. Lakeland, 94 Fla. 347, 115 So. 669, it was well stated that:

"This State has in no instance departed from its doctrine announced in the minority opinion in the French case, supra."

These same principles, as stated by Justice Ellis in the A. C. L.-Lakeland case and the French case, were again stated and re-affirmed in the case of Webb v. Scott, 129 Fla. 111, 176 So. 442.

Upon the hearing before the Chancellor the appellant was heard as to benefits but the Chancellor decreed the foreclosure for the face of the assessment and did not limit the lien to extent of benefits and, in this regard, we think he has erred. The evidence establishes that the benefits were not greater than one-half (½) of the assessment—and it was error for the decree to be entered for more.

I think the decree should be reversed.

CHAPMAN, J., concurs.