SNOHOMISH COUNTY v. PUGET SOUND NAT. BANK OF EVERETT et al.

(Circuit Court, D. Washington, N. D.  May 10, 1897.)

1. REMOVAL OF CAUSES—QUESTIONS OF LAW AND FACT.
   There is no difference, in the method of determining whether a case can be removed from a state to a federal court, between cases in which the right to such removal depends on questions of fact and those in which it depends on questions of law arising on the record.

2. JURISDICTION OF FEDERAL COURTS—SUITS TO WIND UP NATIONAL BANKS.
   A suit against an agent of the shareholders of a national bank, appointed pursuant to the act of congress to wind up its affairs, by which suit it is sought to restrain such agent from disposing of the property of the bank, and to secure the appointment of a receiver of such property in order that it may be distributed under the orders of the court, being in effect a suit to wind up the affairs of an insolvent national bank, is a suit arising under the laws of the United States of which the federal courts have jurisdiction concurrent with the state courts.

3. SAME—NATIONAL BANKS—RECEIVERS APPOINTED BY COMPTROLLER.
   The assets of an insolvent national bank are not brought under the control or protection of the federal courts by being taken into custody by a receiver appointed by the comptroller of the currency, nor by their transfer from the receiver to an agent of the shareholders appointed pursuant to the act of congress to wind up the affairs of the bank.  In re Chetwood, 17 Sup. Ct. 385, 165 U. S. 443, followed.

This was a suit by the county of Snohomish against the Puget Sound National Bank of Everett, and A. J. Hayward, and others, to enjoin an agent engaged in winding up the affairs of the bank from proceeding further, and to procure the appointment of a receiver to take charge of its remaining assets.  The cause was heard on motion to dismiss, and on demurrers to the bill.

L. K. Church, for complainant.

C. E. Shepard and H. D. Cooley, for defendants.

HANFORD, District Judge.  Owing to pressure of many duties, it is not practicable for me at this time, in ruling upon the motion to dismiss and the demurrers to the bill of complaint, to do more than give a general outline of my views upon the questions which were argued.

In entering upon the first inquiry as to jurisdiction, we are met by the questions whether the case is removable, and whether it has been removed from the superior court of Snohomish county, so as to invest this court with jurisdiction.  The superior court made an order denying, on legal grounds, the petition to remove the case to this court, but I do not agree with counsel for the plaintiff in his contention that there is any such difference between cases in which the removability of a cause depends upon the determination of questions of fact and those in which only questions of law arising upon the facts shown by the record are to be considered, that a decision by a state court of questions of law affecting the right of removal is more conclusive than it would be if the court had assumed to determine questions of fact.  In both classes of cases the parties have a right to take the judgment of the United States circuit court as to its own jurisdic-

tion, and in every such case the presentation of a petition for removal and bond to the court of original jurisdiction, and the subsequent filing of the transcript of the record in the circuit court, operates to remove the cause, and devest the state court of its jurisdiction completely, without any order granting the petition, if in fact the cause is removable under the laws of congress, and the proceedings are taken in time.

I find by the complainant's statement of its case in the bill of complaint that the case is one of which this court might have taken original jurisdiction as a suit of a civil nature, arising under the laws of the United States. It appears to me to be a suit against an agent of the shareholders of a national bank, elected in a manner provided for by an act of congress, and authorized by the same act to take from a receiver the entire assets of the bank remaining undisposed of, for the purpose of winding up the affairs of the banking association, and, to that end, empowered by the same law to prosecute and defend actions, and also required to render a final account of receipts and disbursements with vouchers, to the United States circuit or district court, for the district in which the bank was located. The object and purpose of the suit are to restrain this agent from proceeding to dispose of the property in his hands, held in his trust capacity, and from settling and compromising liabilities of certain debtors of the bank, and to take the whole of the remaining assets of the bank out of his hands, so that the complainant may realize therefrom a sum of money for which it has a claim against the bank. The bill calls for a discovery, and for an accounting by the agent, and for the appointment of a receiver to take the remaining assets into his custody, to the end that the court having jurisdiction of the cause may have complete control of the assets, and power to dispose of the same, and distribute the proceeds. For all practical purposes, this is a suit to wind up the affairs of an insolvent national bank, and jurisdiction of such cases is conferred upon this court by the laws of the United States defining the jurisdiction of circuit courts.

The motion to dismiss is upon the ground that the superior court of Snohomish county, in which the suit was originally brought, did not have jurisdiction. It is my opinion, however, that said court, being a court of superior and general jurisdiction in common law and equity causes, was a court of competent jurisdiction for the trial of the issues tendered by the averments of the bill. As a court of equity having jurisdiction of the parties, it had the power to remove an unfaithful or incompetent trustee, and to thereafter administer the trust for the benefit of those having rights according to the principles of equity. The jurisdiction of federal courts in civil causes is concurrent with the jurisdiction of state courts, except in cases in which the federal jurisdiction is made exclusive by some provision in the constitution or laws of the United States, and I have not been referred to any such provision applicable to this case. The jurisdiction of the superior court was not barred by the rule of law that an estate or property in the custody of one court cannot be interfered with by process from another court. The assets of the bank were not brought under the control or protection of this court by being taken into custody by a receiver

appointed by the comptroller of the currency, nor by the transfer from the receiver to the agent of the shareholders.

The decision by Judge Morrow in the case of Stateler v. Bank, 77 Fed. 43, 58, cited by counsel for defendants, upon this point, has been in effect reversed by the supreme court of the United States, in an opinion rendered on the 15th day of February, 1897, granting a writ of certiorari in the same case. In re Chetwood, 165 U. S. 443, 17 Sup. Ct. 385. In the opinion by Mr. Chief Justice Fuller the doctrine of the supreme court is given as follows:

"It is true, as stated in Re Tyler, 149 U. S. 164, 181, 13 Sup. Ct. 785, 789, * * * 'no rule is better settled than that, when a court has appointed a receiver, his possession is the possession of the court, for the benefit of the parties to the suit and all concerned, and cannot be disturbed without the leave of the court; and that if any person, without leave, intentionally interferes with such possession, he necessarily commits a contempt of court, and is liable to punishment therefor.' But we do not regard these proceedings as falling within that rule. * * *. The receiver acts under the control of the comptroller of the currency, and the moneys collected by him are paid over to the comptroller, who disburses them to the creditors of the insolvent bank. Under Rev. St. U. S. § 5234, when the receiver deems it desirable to sell or compound bad or doubtful debts, or to sell the real and personal property of the bank, it devolves upon him to procure 'the order of a court of record of competent jurisdiction'; but the funds arising therefrom are disbursed by the comptroller, as in the instance of other collections. The circuit court did not have the assets or property of this bank in its possession on July 19, 1890, nor was the leave of that court necessary in order that the receiver might be made a party defendant to the action instituted by Chetwood on that day. In the bill filed by Stateler in the circuit court, January 4, 1896, to enjoin Chetwood and the bank, the averment is made that on February 21, 1889, the receiver filed an application in the circuit court entitled 'In re Application of Receiver of the California National Bank for the Sale of Personal Property'; and the bill asserts as a conclusion of law that thereby 'the said receiver submitted himself and the affairs of said banking association to the jurisdiction of this honorable court.' The application thus referred to is not made part of the return to the rule, but from the averments of the bill in regard to it, and from the terms of the national banking law itself, we think it plain that no such result followed its presentation. Our attention has been called to no case in which it has been held that the filing of such petitions by national bank receivers in the federal courts operates to make the receiver an officer of the court, or to place the assets of the bank within the control of the court, in the sense in which control is acquired where a receiver is appointed by the court. * * * About four years after the suit was commenced, Stateler was elected agent to succeed the receiver, and the usual assignment by the comptroller and receiver to him, as such, was executed. The legality of Stateler's election, though controverted, must be conceded for the purpose of this application. But did the substitution of an agent for the receiver oust the jurisdiction of the state court? Certainly not. He was no more an officer of the circuit court in the first instance than the receiver was. The agent proceeds in the settlement with like authority to that conferred upon the receiver although, at the conclusion of his duty, he is required to render to the circuit or district court of the United States, for the district where the business of the bank is carried on, 'a full account of all his proceedings, receipts, and expenditures as such agent, which court shall, upon due notice, settle and adjust such accounts, and discharge said agent and the sureties upon said bond'; and thus he and his bondsmen are protected by the final order of the federal court upon the performance of the conditions imposed. But there is nothing in the language of the statute from which it can be inferred that it was the intention that the jurisdiction of state courts of competent and concurrent jurisdiction, first obtained, should be interfered with by restraining orders issued by federal courts on the application of such an agent. The agent may, indeed, intervene in a case in the state court, and receive the fruits of the litigation to be administered, subject to the final approval of the federal court;

ar 1, accordingly, Stateler, as agent, submitted himself to the jurisdiction of the state courts, and applied for an order turning over to him the funds so far as realized. Nevertheless, the agent must abide the result, and cannot control it, through the interposition of another independent and concurrent jurisdiction."

Assuming, as I must, for the purpose of the motion and the demurrers, that the facts stated in the bill of complaint are true, there appears to be just cause for rescuing the remaining assets of the bank from the agent of the shareholders, in order that something may be realized therefrom to satisfy the claim of the complainant.

For these reasons, the motion to dismiss will be denied, and the demurrers to the bill overruled.