FLORIDA BANK & TRUST COMPANY, a banking corporation, *Appellant,* v. IRENE YAFFEY and her husband, AL YAFFEY, *Appellees.*

136 So. 399.

En Banc.

Opinion filed August 5, 1931.

Petition for rehearing denied September 15, 1931.

WHITFIELD AND DAVIS, J.J., dissenting.

*Bussey, Johnston and Lilienthal,* of West Palm Beach, for Appellants;

*Blackwell, Donnell and Moore* and *Quincey & Rice,* of West Palm Beach, for Appellees.

DAVIS, J.—This was a suit in chancery in the Circuit Court of Palm Beach County. The appeal is from a de-

cree allowing a preferred claim against the Florida Bank & Trust Company, as liquidator of the First American Bank & Trust Company, an insolvent banking institution, by which decree the court directed the payment by the liquidator of the sum of.$20,510.00 as a preferred claim out of the assets of the First American Bank & Trust Company.

The theory of the case in the court below was that the bank was insolvent at the time it accepted certain money of the complainants, and was known to be insolvent by its officers, especially its President, who was in active charge and management of the bank. The appellees, who were complainants in the court below, urged the proposition that accepting their money under such circumstances amounted to a fraud upon them, and that they were permitted to rescind, and impress a trust upon, and demand back the money which they paid over; that as long as the First American Bank & Trust Company remained open to the public and doing business there was an implied representation that such bank was solvent, as well as an implied invitation to the public to come and deal with it; that the officers and directors in permitting the bank to stay open, when it was insolvent to their knowledge, was a fraud upon the general public, and especially upon the appellees, who asserted that they had relied upon this implied representation and invitation to their injury.

The facts of the case appear to be as follows: On June 15, 1928, Irene Yaffey, one of the complainants, purchased from the First American Bank & Trust Company a New York Exchange on the National Park Bank in New York City for $13,160.00 and paid cash for it. Again, the next day, on Saturday, June 16, 1928, said Irene Yaffey purchased from the same bank a cashier's check for $7,350.00 and paid cash for it. The latter transaction was had just a few minutes before 12.00 o'clock noon on Saturday,

June 16, 1928. The bank closed at noon on Saturday, June 16, 1928, and never re-opened. On Monday following,—June 18, 1928—the Comptroller of the State of Florida took charge of said bank because of insolvency and the liquidation of the same began. The closing of the bank referred to appears to have been the second time that the bank had closed its doors. The first closing was about a year and a half previous to the latter. Subsequent to the first closing the Comptroller had permitted the bank to re-open upon being refinanced, whereby additional capital was paid into the bank.

In deciding this case on its merits, we have purposely disregarded the very evident impropriety of the procedure which is followed in bringing this case to a hearing, and have adopted the view that the petition which was filed in a supposed cause entitled, "In re: The Receivership of the First American Bank & Trust Company", was in effect an independnet suit in equity and in that aspect we have dealt with it, notwithstanding the fact that the appellant has assigned error raising this specific point. We do so because the case has been decided on other points going to the sufficiency of the petition, which have been determined in favor of the appellant. A bank liquidator in this State under the Statutes providing for his appointment and controlling his duties, is a representative or agent of the *Comptroller* and is not an officer of the Court which has confirmed the fact of the bank's insolvency thereby warranting his appointment. Such liquidator is not therefore before the courts for any purpose except when brought before it in an appropriate proceeding or when he voluntarily appears therein pursuant to law.

A bank is insolvent when it is unable to meet its current obligations as they mature, though its assets may be greatly in excess of its liabilities. In this respect a bank differs from ordinary corporations where the rule is that

such corporations are not insolvent where the entire property and assets are sufficient to meet the liabilities by way of liquidation. See Ann. Cas. 1916-C page 85.

But in order to entitle the complainants to the award of a preference against the First American Bank & Trust Company on account of the matters hereinbefore referred to, it was necessary for them to have alleged in their petition and established by their evidence not only that the bank was insolvent, but that it was hopelessly so, to the knowledge of its officers, or at least of that one of its officers who was directing and controlling its affairs at the time of their acceptance from the complainants of the money which was alleged to have been paid over by them. Unless this was made to appear, both by allegata and probata, there was no such fraud upon the complainants as would entitle them to a preferred claim after the bank closed.

It is undoubtedly true that where the bank is hopelessly and irretrievably insolvent to the knowledge of its officers at the time of receiving a deposit of additional funds to be handled by it in the usual course of its banking business, that then fraud is undoubtedly committed by the bank for which there is a remedy in equity but such fraud must be proved and is not to be presumed. See Richardson v. N. O. D. R. Co., 102 Fed. 780; Richardson v. N. O. Coffee Co., 102 Fed. 785.

The burden of proof of such fraud is on the complainant, who asserts it. This is not met by a mere showing that the bank was in an embarrassed condition, nor by a showing of the mere fact of insolvency at the time the deposit of other money was received. The insolvency must be of such hopeless character that it was manifestly impossible for the bankers to reasonably expect to continue in business and meet their obligations, and that that fact must have been known to the bankers, so as to justify the conclusion that the bankers accepted the de-

positors' money knowing or having good and sufficient reasons for knowing, when they did it, that they would not and could not in reasonable probability respond when the depositor or other claimant demanded it. In other words, *fraud* must be proved in the *acceptance* of money. An honest and reasonably founded mistake as to the condition of the bank and an honest and reasonably founded opinion that the institution was solvent and would be able to continue in business, if it exists, negatives the conclusion of fraud upon which the plaintiffs' cause of action must depend. See Fidelity & Deposit Co. v. Kelso State Bank (C. C. A. 9 C., Oregon 1923), 287 Fed. 828; 20 A. L. R. 1206, *et seq*.

It has been held by respectable authority that a deposit made in a bank in the usual course of business vests title in the bank, and such deposit cannot be recovered by a depositor on the ground of fraud, though the bank was insolvent and failed on the next day, though the deposit was made in reliance on representations of the President that the bank was all right, unless the officers of the bank knew, or should reasonably have known, of its insolvency at the time of the deposit or other transaction involving the receipt of money. In such cases, however, the rule is that the officers of the bank may be presumed to have known the real and actual condition of the bank in the absence of a very clear and reasonable showing to the contrary. See New York Breweries Co. v. Higgins, 79 Hun. 250, 29 N. Y. Sup. 416. See also in this connection the following cases: Furber v. Dane, 204 Mass. 416, 90 N. E. 859, 27 L. R. A. (N. S.) 808; Bruman v. Tillinghas (C. C. A. 6 C. 1913), 201 Fed. 609; Quin v. Earle (C. C. A. Pa. 1988), 95 Fed. 728; Williams v. Van Norden Trust Co., (1905), 93 N. Y. Sup. 821; Stapleton v. Odell (1897), 47 N. Y. Sup. 13; Schannbery v. Citizens National Bank (C. C. A. 8 C. 1929 Ia.), 33 Fed. (2nd) 673.

It has been uniformly held that fraud is never presumed

and that every one of the elements making up alleged fraud must be clearly proven. In this case the writer is of the opinion that there was no evidence in the record from which the court could properly have found that the bank was so hopelessly insolvent and that such insolvency was known to its officers at the time the transaction involved in this case occurred as would warrant a finding that fraud was committed on the complainants in regard to the transactions mentioned.

It appears that the bank continued to meet its current obligations up to the very time that it closed. The bank examiner called by appellees testified that the officers of the bank had hopes of continuing in business in the usual manner and had not given up hopes of being able to continue in the banking business when the bank closed in the regular course of business on Saturday.

The fact that the Comptroller did not permit the bank to re-open on Monday following is a circumstance to be considered, but which is not by any means conclusive proof of the fact that the money received by the bank in the due course of business on the preceding Saturday was fraudulently received, or that such money was not received in good faith. To have suspended the business of the bank, and refused deposits, or to have announced to the public that the bank was temporarily unable to carry on the usual banking business of handling transactions like that involved here, pending an attempt by the bank officials to secure additional capital, or to borrow money sufficient to tide the bank over its financial stringency, would have destroyed all prospect of success and have been itself an act of insolvency for which the bank should have been required to immediately close.

This is not a case of a general deposit. Had the bank remained open a short while longer, whether insolvent or not, this particular claim would never have arisen. So assuming that the evidence fully establishes the fact that

by reason of its condition the bank could not have expected to remain open much longer without more capital being added, the writer is of the opinion that this does not prove that at the time the New York Exchange was purchased, or the Cashier's check obtained, that the bank's officials who handled the transaction were charged with knowledge that in all likelihood the bank would be closed before this particular item of business was finally settled. Had the appellees been general depositors placing their money in the bank at the time involved, with the intention that it should remain on deposit there for some length of time, they would have been in a much better position to have relied upon the kind of evidence offered, although I do not by any means intend to finally assert that it would have met the test we have laid down in the foregoing portion of this opinion.

The writer of this opinion thinks that the evidence points to a *bona fide* attempt and desperate effort on the part of the bank's officials to continue in business and the circumstance or failure of such efforts do not entitle the complainants in this case to a preference of the assets of the insolvent bank which would be at the expense of other depositors as equally entitled if this is allowed and that the decree of the chancellor was therefore erroneous and should be reversed with directions to disallow the claim as a preference and approve it as a common claim against the liquidator defendant to be paid in due course of liquidation.

As to the merits of this particular case, however, Mr. Chief Justice Buford, Mr. Justice Ellis and Mr. Justice Terrell are of the opinion that the allegations and proof make out a case sufficient to have warranted the chancellor in making a decree allowing the preference which has been appealed from, and that therefore the decree appealed from should be affirmed as to the pleadings and proof in this particular case. Mr. Justice Whitfield, Mr.

Justice Brown and the writer are of the opinion that the decree appealed from should be reversed because of the insufficiency of the petition to warrant the relief prayed for under the principles of law announced in this opinion, which principles of law are agreed to by a majority of the Court.

Under these circumstances, the decree appealed from must be affirmed, and it is so ordered.

WHITFIELD AND BROWN, J.J., concur.

BUFORD, C.J., AND TERRELL J., concur in the conclusion.

ELLIS, J., agrees to affirmance.