G. P. GARRETT, *Appellant,* vs. W. H. TUNNICLIFFE, as Liquidator of the State Bank of Orlando & Trust Company of Orlando, Florida, *Appellee.*

145 So. 213.

Division B.

Opinion filed December 15, 1932.
Petition for rehearing denied January 2, 1933.

*George Palmer Garrett,* for Appellant;

*H. M. Voorhis,* for Appellee.

TERRELL, J.—On July 15, 1929, appellant deposited $3,436.16 with the State Bank of Orlando and Trust Com-

pany which amount remained in and was held by said bank at the time it was taken in hands by the Comptroller for liquidation August 5, 1929. Bill of complaint was filed in this cause July 31, 1931, praying that the said deposit be decreed to be a preferred claim and paid in full with interest thereon. A motion to dismiss the bill was overruled, answer was filed, testimony was taken and on final hearing, the relief prayed .for was denied. This appeal is from that final decree.

The sole question raised by the pleadings and brought here for our determination is whether or not the State Bank of Orlando and Trust Company was ''hopelessly and irretrievably insolvent'' on July 15th, 1929, when the deposit brought in question was made.

Appellant contends that the check representing the deposit shows on its face that it was a special deposit, that while the officers of the State Bank of Orlando and Trust Company, at the time it was accepted represented the bank to be solvent, the facts as later developed showed conclusively that it was then hopelessly and irretrievably insolvent and that this condition was known to its officers and directors.

To support his contention, appellant relies on the following: (1) affidavit of the State Bank Examiner made August 12th, 1929, to the effect that the State Bank of Orlando and Trust Company was insolvent; (2) that the officers of said Bank had very small deposits at the time it closed; (3) that on July 18th, 1929, the Bank of Apopka attempted to withdraw its deposit of $110,000 from said Bank and that while this withdrawal in cash was refused it was permitted to withdraw $45,000 in cash and the balance of $65,000 was paid it in Orlando warrants; (4) that on July 18th, 1929, the Bank invoked the requirement of sixty days' notice to depositors to withdraw savings accounts; (5) that though more than three years

have elapsed since it closed, no dividend has been declared or paid to common creditors; (6) that on July 11th, 1929, the vice president in charge of the Bank made arrangements to borrow $600,000 to carry it through the summer, that $1,539,107 in collateral was placed to secure this loan and that $400,000 of said loan was advanced a few days after the arrangements for it were made; (7) that on July 27th, 1929, the vice president testified that conditions with the Bank were real bad; (8) that the cash reserve at the time the Bank closed was far below the amount required by Section 4140 Revised General Statutes of 1920 (Sec. 6071 Compiled General Laws of 1927); (9) that the total assets of the Bank dropped more than one million dollars from June 29, 1929, to August 5th, 1929; and (10) that the amount of the bills payable on the last named date was far in excess of that allowed by Section 4142 Revised General Statutes of 1920 (Section 6073 Compiled General Laws of 1927).

The record supports appellant's reliance but if true in toto it is sufficient to establish hopeless and irretrievable insolvency on July 15, 1929? A bank is solvent so long as it possesses sufficient assets to pay within a reasonable time, all its liabilities through its own agencies. Federal Reserve Bank of San Francisco vs. Idaho Grim Alfalfa Seed Growers Ass'n, 8 Fed. (2nd) 922, Certiorari denied 270 U. S. 646, 46 Sup. Ct. 347, 70 L. Ed. 778. A bank is insolvent when the capital stock and all its assets are insufficient to meet its liabilities, or when it is unable to meet current obligations as they mature, though its assets may greatly exceed its liabilities, or when capital stock, surplus and undivided profits are exhausted by losses with no immediate prospect of replacing them or when its condition is such that it cannot, in a reasonable time realize on its assets an amount sufficient to

take care of its liabilities. Florida Bank and Trust Co. vs. Yaffey, 102 Fla. 723, 136 So. 399; Yjoumans vs. State, 7 Ga. App. 101, 66 S. E. 383; Fremont County vs. Fremont County Bank, 145 Ia. 8, 123 N. W. 782; Marr vs. Bank of West Tennessee, 44 Tenn. (4 Colda) 471; Livinstain vs. Columbia Banking & Trust Co., 81 S. C. 244, 62 S. E. 249, 22 L. R. A. 445; Michie on Banks and Banking, Vol. 3, page 93. Our statute does not define insolvency but the test as applied in the national bankruptcy act and other tests have been applied and approved. Owens vs. American National Bank of Austin, 36 Tex. Civ. App. 490, 81 S. W. 988.

In Steele vs. Commissioner of Banks, 240 Mass. 394, 134 N. E. 401, 20 A. L. R. 1203, Judge Rugg distinguished the terms "simple" and "hopeless insolvency." Discussing the former he said that a trader or a bank is commonly insolvent when not in condition to pay its debts in the ordinary course as persons carrying on trade or banking usually do, while the test of "hopeless insolvency," he said, was the fact that the bank accepted the deposit knowing through its officers that it would not and could not pay the money when demanded by the depositor. Taking deposits under such circumstances being a preconceived purpose not to pay and is fraudulent. This rule was also followed in Forsythe vs. First State Bank of Mentor, — Minn. —, 241 N. W. 66.

The controlling test of the solvency of a bank is the payment of depositors and creditors in the usual and ordinary course of business. Conkleton vs. Ebmeier, 38 Fed. (2nd) 748, or the excess of assets over liabilities as applied in Akin vs. Hull, 222 Mo. App. 1022, 9 S. W. (2nd) 688. In Dunlap vs. Seattle Nat. Bank, 93 Wash. 568, 161 Pac. 364, it was held that a bank was not insolvent if its assets were sufficient to meet its obliga-

tions within a reasonable time although it did not have cash sufficient for its daily needs.

The rule is that when a bank accepts deposits the law implies solvency but if the bank is, as a matter of fact insolvent at the time a deposit is received and such fact is not actually known to its officers and the circumstances are not such as to charge them with constructive notice thereof, the receipt of a deposit does not work a fraud, and the depositor cannot reclaim the deposit but must stand with the other depositors. Every preferred claim allowed lessens the security of the common creditors and should not be done unless clearly within the rule.

It is therefore settled that if a bank be hopelessly insolvent to its own knowledge and receives deposits, it is the equivalent of a preconceived purpose not to pay, and is a fraudulent act. On the contrary, simple insolvency under circumstances wherein the officers of the bank have reasonable cause to know and should know of the insolvency, does not warrant a rescission of the deposit if there is genuine and reasonable hope, expectation, and intention on the part of the officers of the bank to carry on its business and to recover sound financial standing. Steele vs. Commissioner of Banks, supra; Brennan v. Tillinghast, 201 Fed. 609, 120 C. C. A. 37; Forsythe vs. First State Bank of Mentor, supra, citing many cases.

A bank was held not hopelessly and irretrievably insolvent to the knowledge of its officers, so as to make receipt of a deposit on the eve of failure a fraud, allowing the depositor to reclaim it, where the officers then had a reasonable hope and expectation that a plan of consolidation with other banks would be consummated. Washington Shoe Mfg. Co. vs. Duke, 126 Wash. 510, 218 Pac. 232, 37 A. L. R. 611. This rule should apply with equal force to the instant case, the bank having

made arrangements with other banks to secure funds to carry it over the summer and save it from insolvency.

It may be admitted that it is rarely possible to establish with scientific exactness, the instant at which a banking institution becomes hopelessly insolvent but in the interest of orderly business relations there must be a dead line somewhere and that line is most accurately discerned by an application of the law to the facts of the individual case. It cannot be determined by chance, conjecture or speculation. It may also be safely asserted that few if any banks close and go into liquidation the instant its liabilities irretrievably overcome or absorb its working assets. In fact, in the very nature of the case, that instant would be difficult if not impossible of determination when the bank is laden with large and various assets and liabilities that are constantly fluctuating in value and business conditions are otherwise abnormal and unsettled as was the case here.

The act of declaring a bank insolvent is no trivial matter. It is affected by many considerations and should not be done so long as the bank is able to keep open and meet its obligations with reasonable prospect of continuing in business. When it can no longer do this and the officers whose duty it is to take it in charge and declare it insolvent, have done so, their judgment will not be disturbed unless shown to be clearly arbitrary and erroneous. In this case extreme effort was made to save the bank with reasonable prospect of success till August 3, when a crisis came that it could not stem. From that date it was hopelessly insolvent.

The proof in this case does not meet the burden imposed on the appellant. There is no evidence showing fraud on the part of the officers of the bank or conduct on their part from which fraud could be presumed, the deposit brought in question was made July 15, 1929, the

bank was closed August 5, following. About the time the deposit was made the Bank made arrangements to borrow $600,000.00 to carry it over the summer and secured that loan with ample collateral, $400,000 of this loan was actually paid to the Bank after appellant's deposit, it continued to meet its obligations to the day it closed and in fact paid out more than one million dollars in withdrawals the last thirty days it continued in business. These facts would seem to refute the charge of insolvency on July 15, 1929.

It is true that there is evidence showing fluctuation in the cash reserve as required by Section 4140 Revised General Statutes of 1920 (Section 6071 Compiled General Laws of 1927) but the status of the cash reserve is no test of insolvency. The condition of the capital stock, surplus, undivided profits and other working assets of the bank as compared with its liabilities govern the question of insolvency. The Comptroller may require the reserve to be restored when it drops below the statutory allowance and if this is not done he may close the bank. What has been said about the cash reserve applies with equal force to the charge as to the indebtedness of the bank exceeding that allowed by Section 4142 Revised General Statutes of 1920 (Section 6073 Compiled General Laws of 1927). It is not shown here that any portion or all the bills payable held by the bank when it closed were not embraced within the exception enumerated in the last named statute.

It is also true that on July 18, 1929, the Bank invoked the sixty day notice requirement for the withdrawal of savings accounts but this was three days after appellant's deposit was made and the record discloses that every other bank in the city invoked the same rule at the same time. Some of these banks are still operating and it is shown that the rule was invoked to protect the

banks against heavy withdrawals. A perfectly solvent bank might be reduced to insolvency by such withdrawals.

In fine, the net result of the evidence shows that soon after appellant made his deposit, the bank became very much embarrassed and that by reason of steady withdrawals and failure to secure promptly the balance of the loan previously arranged for, this embarrassment continued to grow worse to the day it closed but constantly to this time there was a "present genuine and reasonably founded hope, expectation, and intention on the part of the bank officials to carry on the business." All the evidence negatives any purpose or thought on the part of the officers of closing or being unable to meet its obligations prior to August 3, 1929, and it appears that all demands on it prior to that time had been met as made.

An honest and reasonable mistake as to the condition of the Bank, or an honest and reasonably founded opinion that the institution is solvent, or that it will be able to continue in business, negatives the existence of fraud upon which appellant's cause of action rests. Florida Bank and Trust Co. vs. Yaffey, 102 Fla. 723, 136 So. 399, Byrd v. Ross et al., 58 Fed. (2nd) 377.

For the reasons announced in this opinion the judgment below must be and is hereby affirmed.

Affirmed.

WHITFIELD, P.J., AND DAVIS, J., concur.

BUFORD, C.J., AND BROWN, J., concur in the opinion and judgment.

ELLIS, J., dissents.

ELLIS, J. (Dissenting).—I am unable to agree to the conclusion reached by MR. JUSTICE TERRELL. The circumstances under which the deposit was received by the bank from Mr. Garrett come fully within the rule that acceptance of general deposits by a bank which is "hope-

lessly insolvent'' to the knowledge of its officers constitutes such a fraud as will entitle the unsuspecting depositor to rescind and recover the money, or give him a preferential claim, or create a trust ex maleficio, provided other conditions sometimes held essential to a recovery, such as augmentation of assets, identification, etc., can be satisfied. See Steele v. Allen, Com. of Banks, 240 Mass. 394, 134 N. E. Rep. 401, 20 A. L. R. 1203, and the long list of authorities cited in the annotation beginning on page 1206 of the last cited volume.

The phrase used in the rule above quoted as to the Bank's condition when it receives a deposit which renders its reception of the deposit a fraudulent act in law is ''hopeless insolvency.'' The word ''irretrievable'' applies to that which cannot be recovered. ''Hopeless'' is not so strong a word. The conditions in which Bank officials may find the Bank's financial affairs may be hopeless so far as recovery by means of a judicious or prudent use of the Bank's asset may redeem it from bankruptcy, but by no means beyond possibility of recovery by means of extraneous aid.

The facts in the case of Federal Reserve Bank v. Idaho Grim Alfalfa Seed Growers Assn., 8 Fed. (2nd) 922, upon which the court held the Standford Bank insolvent and title to the drafts involved did not pass to it, were not more conclusive of insolvency and knowledge of that fact by the officers than were the facts in this case, if indeed they possessed as high a degree of probative value as to the fact of insolvency and knowledge of it by the officers.

In that case Judge Rudkin said that the receipt of a deposit by an insolvent bank is a fraud on the depositor and title to the deposit does not pass. When such insolvency, hopeless insolvency, is known to the officers of the Bank and they are presumed to know the condition

of the Bank's affairs, the receipt of a deposit from an innocent and unsuspecting depositor is such a fraud upon him that title to his money or checks constituting his deposit does not pass to the bank.

I think that a careful study of the facts set out in the opinion leads to the inescapable conclusion that the Bank was insolvent, that it was hopelessly so when Mr. Garrett made the deposit, and that the condition of the Bank's affairs were fully known to the officers.

So, I think the judgment should be reversed.