No. 31,482

THE MERCANTILE WAREHOUSE COMPANY, *Appellee*, v. CHARLES W. JOHNSON, as Receiver, etc., *Appellant*.

(28 P. 2d 775.)

Opinion filed January 27, 1934.

C. H. Brooks, Willard Brooks, Howard T. Fleeson, F. W. Aley and Carl G. Tebbe, all of Wichita, for the appellant.

W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs and Robt. H. Nelson, all of Wichita, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This appeal arises out of the allowance of a claim against the receiver of a failed state bank.

In November, 1922, the appellee made a deposit in the American State Bank, at Wichita, Kan., and its balance was $1,772.44 when in July, 1923, the bank commissioner took charge of the bank and proceeded to wind up its affairs. The present receiver was appointed by the bank commissioner in July, 1926. It appears that there was correspondence between the appellee and certain persons who were employees of the state banking department with reference to the organization of a new bank and also as to purchase of the appellee's claim, but, until the proceeding herein discussed, there was no attempt on appellee's part to prove its claim. Certain reports filed by the receiver or his assistants, in listing the depositors of the bank, included the appellee and the amount remaining in its account. It appears from the record as abstracted that in July, 1924, the bank commissioner applied to the district court of Sedgwick county for an order to sell certain assets, and that in July, 1926, the present receiver filed an application for, and on April 20, 1927, the district court made an order, that the receiver give notice to all creditors of the bank to file claims within thirty days from first publication of a notice to be printed three weeks in a newspaper published in Sedgwick county, and that any creditor who failed to file his claim with the receiver within the time specified in the notice shall be forever barred, and that the receiver shall be forever discharged from any liability on account of claims of any creditor who has not filed his claim. The notice was duly published beginning April 23, 1927.

On or about January 30, 1928, the appellee filed its application in the district court alleging, among other things, the general correspondence above mentioned, and that it supposed and believed therefrom there would be no question as to its account, and that on January 11, 1928, it presented to the receiver a formal notice of its claim and that the receiver notified it the claim would not be

allowed. It was further stated the receiver had paid forty per cent on claims and had on hand the sum of fifteen or seventeen thousand dollars for distribution from which a like dividend could be paid plaintiff, the application concluding:

"That claimant did not present its claim sooner to the receiver because neither it, nor its officers, knew of any order of the court nor of any notice published by the receiver of a limit within which the claims might be presented.

"Wherefore, the petitioner prays that an order be made by the receiver that out of the moneys still in his hands and undistributed in said estate a dividend be paid and distributed to this claimant of the same percentage which has been paid by the receiver upon other claims of general depositors in the bank."

On January 30, 1928, this application was presented to the court *ex parte* and an order was made setting the hearing of the application and directing that until final hearing the receiver should not make payment of further dividends to creditors which would prevent payment to appellee, if its claim should be allowed, of dividends thereon equal to those already made on ordinary deposits in the bank. Shortly after its issuance a copy of the application and of the restraining order was served on Howard T. Fleeson, an attorney of Wichita, who represented the receiver. He sent it to an assistant receiver, but it appears never to have reached the receiver or the bank commissioner. There was no service of process and no notice other than as set forth.

Although the application was set for hearing February 25, 1928, owing to the death of appellee's then attorney the matter was not heard until November 8, 1929. In the meantime the bank commissioner and the receiver, having no actual notice of the restraining order, proceeded with the payment of dividends on allowed demands and paid out all but a very small amount which was subsequently used in paying expenses. When the matter came on for hearing the receiver objected for the reason the court had no jurisdiction, and further, that the application was not filed in time. The objections were overruled, testimony was taken and the court made its order that the receiver pay the appellee the amount it would have been entitled to receive out of the funds available for dividends on common claims, had its claim been included among the common claims. From that order the receiver appeals.

Although incidental matters are presented, the answer to the question that the court was without jurisdiction to hear the application and grant the restraining order is decisive.

Prior to February 12, 1908, whenever the bank commissioner became satisfied of a bank's insolvency, it was his duty to report the fact to the attorney-general, who instituted proceedings in the proper court for the purpose of having a receiver appointed to wind up the affairs of the bank (G. S. 1901, § 434). By the enactment of chapter 14, of the Laws of 1908, however, a radical departure was made in that the bank commissioner appoints the receiver, who shall take charge of the bank and its assets and wind up the affairs and business thereof, and pay over all moneys received by him to the creditors of the bank as ordered by the bank commissioner. Under the statute the only recourse he must make to the district court is for authority to sell or compound all bad or doubtful debts due to the bank, or to sell real or personal property of the bank. The 1908 act was amended in 1913 and again in 1927 and now appears as R. S. 1931 Supp. 9-130. The amendments are not here important, although it may be noted that prior to the last amendment it was held that the district court had power to make an order fixing a reasonable time in which claims must be presented to the receiver or be barred. (*Thompson v. Bone*, 122 Kan. 195, syl. ¶ 4, 251 Pac. 178.)

In *Jeffries v. Bacastow*, 90 Kan. 495, 135 Pac. 582, it was contended that the act was unconstitutional in that the appointment of a receiver was a judicial act, but this court said:

"The appointment by the bank commissioner of a receiver for an insolvent state bank, under the banking act of this state, is not a judicial act which must be performed by a court and not by an executive officer." (Syl. ¶ 1.)

"The fact of insolvency having been discovered, the statute directs the bank commissioner's course, and the designation by him of a person to wind up the affairs of the bank is no more a judicial act than his order to the board of directors to remove a dishonest cashier. His powers are purely administrative and in no way infringe upon the ancient authority of courts to determine rights of person and property in specific controversies pending before them." (p. 498.)

The power and authority of the bank commissioner was considered in *Labette County Comm'rs v. Peterson*, 118 Kan. 560, 235 Pac. 848, and it was there said:

"The statutory scheme of bank supervision appears to have been constructed on the idea of plenary power in the bank commissioner to take charge of all the affairs of an insolvent bank and, unhampered by the interference of other authorities, to liquidate its assets and pay its depositors and other creditors. Discretion as to methods and agencies for reaching this end is therefore largely vested in the commissioner. The principle was recognized in *Jeffries v. Bacastow*, supra. . . . Also, *State, ex rel., v. Norman*, 86 Okla. 36; *State, ex rel., v. Quigley*, 93 Okla. 296, 220 Pac. 918; *Koch v. Missouri-Lincoln Trust*

*Co.,* 181 S. W. 44 (Mo.); *Hall v. Tyler County* (Tex. Civ. App.), 247 S. W. 582; *Valley Bank v. Malcolm,* 23 Ariz. 395-404, 204 Pac. 207. Some authorities construing the national bank act (6 Fed. Stat. Ann. p. 850, No. 5234) providing for the winding up of insolvent national banks are: *In re Chetwood,* 165 U. S. 443, 41 Law Ed. 782; *In re Earle,* 92 Fed. 22; *Snohomish County v. Puget Sound Nat. Bank,* 81 Fed. 518; *Rankin v. Miller,* 207 Fed. 602.

"The conclusion here reached takes nothing from the powers of a court of general jurisdiction to make a judicial inquiry touching the dissipation of a bank's assets by or through a receiver, his clerks, assistants, attorneys, etc., in a proper proceeding for that purpose. No such case is presented here." (p. 564.)

It thus appears from the statute and the decisions that the receiver was acting in an administrative and not in a judicial capacity. While in this receivership it appears that a prior receiver had obtained authority to sell the bank's assets, that did not give the court any continuing authority or jurisdiction, and when the present receiver obtained an order to give notice to present claims or be barred, it was the last time the receiver had to invoke the court's supervisory powers. The only further power the court had, from a strictly administrative standpoint, was to rule on the receiver's compensation upon application of any party in interest.

When the claimant filed his application and obtained the restraining order, no notice was given the receiver, no process of any kind was served upon him, there was no suit or special proceeding pending to which the receiver was a party when the application was filed, and there was no opportunity for the claimant to intervene, and it must be held that what he did was abortive, as was the court's restraining order. The fact that appellee's claim was not included among those on which liquidating dividends were being paid did not constitute payments being made by the receiver under the order of the bank commissioner a dissipation of the bank's assets. If the appellee wished to establish his claim, it should have been done in an independent action. When the receiver appeared and objected to the court's jurisdiction, the objection should have been sustained.

Appellee argues that by appearing and resisting the matter the receiver entered a general appearance, but, even if so, that was the start of claimant's suit and did not refer back and give life to what was a nullity. It is not necessary to decide whether the receiver, in a proper case, would be held to have notice of the restraining order because of service on his attorney.

The bank failed in July, 1923, and appellee's claim, if based on a general deposit, would ordinarily have been barred in July, 1926, and if on a written instrument, in July, 1928. In addition, it was

barred by reason of the notice given by the receiver under the court's order above mentioned. There might be equitable reasons why claimant should be relieved from a harsh application of a rule requiring compliance with the latter notice, but no such reasons appear here. Claimant knew from the beginning of the failure of the bank, and it must be held to have known that it had to make timely proof of its claim. The fact that it was listed as a depositor with a certain balance did not dispense with proof of its claim. Many a lawsuit has developed because of discrepancy between what a bank's books show and what the depositor claims, and it is possible the bank's books would show a balance where nothing was actually due. The record shows that other creditors, in the same situation as appellee, failed to make proof of their claims and did not receive dividends.

Our attention is called to *Almquist v. Johnson*, 130 Kan. 417, 286 Pac. 200, in which claims were presented after the time fixed by the court. In that case it appeared that at the time of filing the action, and it should be noted it was an independent action, the receivership was not closed and there were moneys on hand for final distribution. That case involved only the question of the effect of chapter 88 of the Laws of 1927, fixing the time for proof of claims within one year from the date of the appointment of the receiver, and it was held that it was not retroactive. In the case before us the final distribution to creditors was made on August 27, 1928, the sum of about $98 retained for payment of expenses being all that was on hand when the matter came on for hearing in November, 1929. On this latter date it appeared that the receivership was virtually closed, that the claimant had not pursued a proper and timely method of establishing his claim, and that judgment should have been rendered for the receiver.

Our attention is directed to cases arising under the federal statute with reference to the liquidation of failed national banks, and also to cases arising in other states, but, in view of our statutes and our own decisions, no good purpose would be served in discussing them here. In so far as they involve administrative receiverships, they support the conclusion here reached, with the possible exception of *Florida Bank & Trust Co. v. Yaffey*, 102 Fla. 723, 136 So. 399, where an application was filed in a manner similar to that here, and in which the court said:

"In deciding this case on its merits we have purposely disregarded the very

evident impropriety of the procedure which is followed in bringing this case to a hearing, and have adopted the view that the petition which was filed in a supposed cause entitled, '*In re The Receivership of the First American Bank & Trust Company,*' was in effect an independent suit in equity, and in that aspect we have dealt with it, notwithstanding the fact that the appellant has assigned error raising this specific point. We do so because the case has been decided on other points going to the sufficiency of the petition which have been determined in favor of the appellant. A bank liquidator in this state, under the statutes providing for his appointment and controlling his duties, is a representative or agent of the comptroller and is not an officer of the court which has confirmed the fact of the bank's insolvency thereby warranting his appointment. Such liquidator is not, therefore, before the courts for any purpose except when brought before it in an appropriate proceeding or when he voluntarily appears therein pursuant to law." (p. 726.)

In so far as the above cases involve judicial receiverships, they are not in point.

The judgment of the lower court allowing appellee's claim is reversed and the cause remanded with instructions to render judgment for the appellant.

HUTCHISON, J., not sitting.