## No. 31,611

J. E. HAYES, Receiver of THE FIRST NATIONAL BANK OF HOLTON, *Appellant*, v. V. E. ADDY and HARRY KAUL, *Appellees*.

(32 P. 2d 243.)

Opinion filed May 5, 1934.

*Albert M. Cole,* of Holton, for the appellant.
*E. D. Woodburn,* of Holton, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action by the receiver of a failed bank to recover on a note against the maker, Addy, and an indorser, Kaul, who defended on the ground he was an accommodation indorser.

The First National Bank of Holton failed May 18, 1931. For some years prior thereto both defendants had been transacting some business with the bank under an arrangement whereby Addy had been borrowing money for use in a venture in which he and Kaul were interested. Defendants claimed this course of dealing had

ceased some time prior to the giving of the note in question, and that the bank had been notified that Kaul was no longer interested. On March 1, 1931, Addy gave the bank his note for $5,000 and early in May, 1931, the note was indorsed by Kaul, under circumstances hereinafter detailed. The receiver of the bank brought suit on the note and Kaul defended on the ground he was an indorser for the accommodation of the bank. The receiver's reply pleaded estoppel of the indorser to deny liability. It is not necessary that all the pleadings and testimony be reviewed touching the course of business between Addy and Kaul and between them and the bank, especially in connection with the claim that Kaul had guaranteed the note, for at the close of the trial Kaul moved that plaintiff elect whether he stood on the indorsement or the guaranty, at which time plaintiff elected to rely on the indorsement.

The court rendered judgment for plaintiff against defendant Addy, and for defendant Kaul against the plaintiff, who appeals, claiming that under Kaul's version of how and why he indorsed the note, he is estopped to deny liability thereon.

The testimony showed that early in May, 1931, and before the note sued on was due, Riederer, assistant cashier of the bank, took the note to defendant Kaul to have the same indorsed and according to Kaul, who testified that he had been connected with a bank in Holton in the capacity of cashier and president for a period of ten years, the following took place:

"Q. Please relate that conversation as near as you can, what he said and what you said. A. He stated they were due for a bank examination soon and the examiners were very critical especially regarding chattel mortgage security, that this note had ample security, but that nowadays examiners were asking three or four times the security, and it would be an accommodation to him if I would indorse that note with a soft lead pencil and he would erase the indorsement after the examination.

"Q. Did you indorse it with a soft lead pencil? A. Yes.

"Q. Go ahead and tell everything else that was said that you remember. A. I don't know as I remember anything in particular except his stress on bank examiners being suspicious of chattel mortgage paper and that they called for three or four times the security they already had.

"Q. Pursuant to that conversation did you indorse the note? A. Yes.

"Q. Did you have any information or knowledge at that time that the First National Bank of Holton was in a bad way financially? A. No, sir.

"Q. Did Riederer tell you of any such condition? A. No, sir.

"Q. With reference to your conversation with F. L. Riederer what was said there regarding examination of the bank? A. He said they were about due for an examination.

"Q. What did he say with reference to making the note more secure or as to any more security on it? A. He did not say anything about that, he said it had worlds of security.

"Q. You did not expect that your indorsement would remain on the note? A. No, sir.

"Q. You expected to go down and erase it, or that they would? A. That they would.

"Q. That was to be done after the examination? A. Yes.

"Q. The purpose of this indorsement was for to show to the examiner? A. From what he said it was to overcome the prejudices examiners were having against chattel mortgage security.

"Q. Did you know that Addy had sold this property that was on the farm? A. No.

"Q. You did not know about this mortgage? A. No.

"Q. All you knew was what Riederer told you at the time? A. Yes.

"Q. All your indorsement had to do with, was because he told you he wanted to show it to the examiner? A. Yes.

"Q. You knew the purpose of the examination? A. Yes.

. . . . . . . . . .

"Q. And you knew if this indorsement showed on there the examiner would be led to believe that you were liable on the note, did you not? A. Well, I did not know if I would or not, I question that."

There is no testimony in the record which controverts Kaul's own version of why he signed the note, and it is clear that he signed it knowingly and under no misapprehension and that he knew when he signed it that the purpose of the indorsement was to deceive the bank examiner. This is not a case where there is doubt as to the purpose. In addition to his statement of the purpose, it must be borne in mind that he had been cashier and president of a bank for a period of ten years. He knew just what a bank examination is for, and that if enough indorsements of responsible parties could be had on notes belonging to the bank, under circumstances similar to those under which he indorsed, insolvency of a bank could be indefinitely concealed from the bank examiner.

The precise situation here existing has not obtained in cases heretofore considered by this court. In *State Bank v. Olson,* 116 Kan. 320, 323, 226 Pac. 995, it was said:

"The statute requires careful examination by the bank commissioner periodically in order that those who deal with banks may not be misled by appearances. To sanction any arrangement whereby the real assets and securities of a bank are to be regarded as less than or different from, the apparent assets and securities, would tend to defeat the entire purpose of the regulatory statutes. Parties may not participate in a transaction, the object of which is to give to the assets of a bank a favorable appearance for purposes of examina-

484

tion, but less favorable for purposes of liability or enforcement. The defendant, having signed the note with full understanding of its purposes, cannot be relieved of liability. Considering the note as a part of the bank's assets, an understanding or agreement of nonliability was neither proper nor tenable. It amounted to a fraud upon the depositors, stockholders and the public to agree that the obligation which the defendant assumed was in fact not an obligation. It amounted to a fraud upon the depositors, creditors. and stockholders of the bank and a fraud upon the public, because it gave assurance that the assets of the bank were sound. Having given the note with the avowed object of having it appear as an asset for purposes of examination, she is estopped from asserting a secret understanding that she was not to be held liable. The law will not countenance contracts that are against the public good, and therefore forbidden by public policy."

And citation of authorities is given.

In *Hudson State Bank v. Richardson,* 128 Kan. 238, 276 Pac. 815, the question was considered, earlier cases reviewed, and it was held in that case there was no liability, the opinion reciting:

"When the first note was divided 'to get by the bank examiner,' M. M. Richardson's comprehension of the transaction was that as a favor to an old friend he was helping the bank to comply with a requirement of the bank examiner. The jury made a special finding on the subject. The finding was, M. M. Richardson did not know and understand and intend that his note and mortgage would be placed among the assets of the bank and, be. passed on by the bank examiner as assets of the bank. He merely understood he was satisfying the bank examiner. The finding expresses a fair inference from the testimony." (p. 242.)

Appellee answers by saying that assuming that if he did act to deceive he was induced to do so by the bank, that the bank could not recover in such circumstances and the receiver is in no better position. The contention is not good. The receiver represents more than the bank itself; he represents the creditors and shareholders. It is no mere conjecture that persons deposited money in the bank and continued to do business with it on the assumption, in part at least, that if examinations of it had not disclosed it to be in sound condition, it would have been closed, and these persons have an interest distinct from the bank itself, and the receiver represents them. Not only under our statutes, but also under the national banking act, the receiver of a failed bank is an administrative receiver (*Mercantile Warehouse Co. v. Johnson,* 138 Kan. 889, 28 P. 2d 775), and his powers are not limited to doing those things which the bank itself could have done. . (See, also, *German-Am. Finance Corp. v. Mer. & M. State Bank,* 177 Minn. 529, 225 N. W.

891, 64 A. L. R. 582, and the annotation on liability on a note given to aid in evading law in 64 A. L. R. 595.)

We have no doubt as to what the result should be in this case; that under his own statement Kaul signed the note in question for the deliberate purpose of deceiving the bank examiner as to the condition of the assets of the bank, and by reason thereof is now estopped to deny liability. Our conclusion makes it unnecessary to discuss other questions presented, such as the authority of the cashier to bind the bank, whether or not Kaul received consideration for signing the note, whether the note was nonnegotiable so that Kaul could raise his defense, etc. So far as the proposition that the general finding of the trial court in Kaul's favor is conclusive here is concerned, it has been shown that Kaul's own testimony shows his liability, and there is no testimony to the contrary.

The judgment of the lower court is reversed, and the cause remanded with instructions to render judgment in favor of the plaintiff and against the defendant Kaul for the amount due on the note.